(No. 34528.—

LLOYD MOREY, as Trustee, *v.* ELMER J. HOFFMAN, State Treasurer, *et al.*, Appellees.—(MICHIGAN TYPESETTING COMPANY, Appellant.)

*Opinion filed October 23, 1957.*

WILLIAMS AND LEONARD, of Chicago, (EDNYFED H. WILLIAMS, JOHN M. LEONARD, JR., and LEONARD D. RUTSTEIN, of counsel,) for appellant.

HUGH J. GRAHAM, JR., MARK O. ROBERTS, and LEE D. MARTIN, all of Springfield, (LATHAM CASTLE, Attorney General, of Springfield, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This appeal comes to this court from the circuit court of Sangamon County, questioning the propriety of an order of that court which vacated an order and decree theretofore entered which the appellant claims approved in advance the sale of an asset known as the Esquire Apartment Hotel in Fort Lauderdale, Florida, in accordance with the requirements of a certain deed and indenture of trust. A freehold being involved, the appeal is taken directly to this court.

Orville E. Hodge, formerly Auditor of Public Accounts of the State of Illinois, in the summer of 1956, admitted the conversion to his own use of State funds. By deed and indenture of trust dated August 31, 1956, executed by Orville E. Hodge, Margaret C. Hodge, his wife, and Lloyd Morey, as trustee, the said Orville Hodge and his wife conveyed certain assets, including the Esquire Apartment Hotel, in Fort Lauderdale, Florida, to the trustee for the purpose of liquidating the assets and paying over the avails, after costs and expenses, to the general revenue of the State of Illinois. The deed and indenture of trust provided two methods of sale for liquidation of the assets. It authorized

public sale after specified publications, or private sale by the trustee upon publication and after obtaining "an Order approving such sale in advance thereof, from the Circuit Court of any County," by "filing a complaint or petition in equity in any such Court, making the State Treasurer and Attorney General parties thereto." It further provided the terms of any sale should be cash, and no property so sold should be delivered, nor any title passed, unless the purchaser paid for the same in cash.

The trustee thereafter twice attempted to sell this property at public auction pursuant to the publication required by the indenture. Upon each occasion no bids were received. At one of these sales the attorney for Mrs. Hodge made known certain claims she professed to have against this and other assets, implying that bidders were acting at their peril.

Mrs. Hodge had made claim to the furnishings of penthouse "A" in the Esquire Apartment Hotel, and failing to arrive at an amicable arrangement with the State of Illinois, she filed suit in the circuit court of Sangamon County to set aside portions of the deed and indenture of trust. So far as we can ascertain, that cause remains pending and has no bearing upon the merits of this cause, except insofar as it relates to an area of unresolved terms of this purported sale.

Being unable to accomplish liquidation by public sale, the trustee, by his agent, The Northern Trust Company, attempted a private sale. Independent appraisal fixed the fair cash market price at approximately $550,000. On December 5, 1956, the trustee received an offer to buy from the Michigan Typesetting Company for $550,000, accompanied by a check in the amount of $55,000. The Attorney General of the State of Illinois, as attorney for Lloyd Morey, the trustee, accepted this offer by letter dated December 17, 1956, pursuant to certain conversations with the buyer's representative, subject to court approval, and the ability to deliver title and a guarantee policy. The terms

of purchase and sale were not then agreed upon. The written offer previously submitted was not accepted or executed, nor was it ever accepted as submitted. The Attorney General informed the Michigan Typesetting Company that publication for approval of the sale had been made as directed by the circuit court of Sangamon County. This original offer was never approved by the court. The first hearing upon the petition for approval of the private sale was held on February 13, 1957, and the court was informed that several conditions and terms of sale remained to be determined. The court took the matter under advisement until February 25, 1957, upon which date the hearing continued. A few days prior to February 25, Mrs. Hodge had taken possession of penthouse "A" in the hotel property and refused to vacate. Thereupon an additional problem of possession confronted the proposed purchaser and seller. The problem was discussed on that date. On February 26, 1957, the court entered a decree approving the sale for cash of the Esquire Apartment Hotel to the Michigan Typesetting Company, together with improvements, furniture, fixtures, furnishings, chattels therein, a station wagon and all other hotel property and equipment necessary to conduct business, for $522,500, subject to a mortgage, and the seller to pay no commission. The decree further provided "The agreement to be entered into between Plaintiff, Trustee, and the buyer, Michigan Typesetting Co., pursuant to this decree will be filed in this cause and be incorporated in this decree as fully as if set forth herein." The decree additionally found that "Plaintiff, Trustee, and Michigan Typesetting Company (a corporation created pursuant to the laws of the State of Michigan, which has entered its appearance in this cause) buyer, intend to enter into an agreement containing the terms and conditions of sale of said Esquire Hotel; such agreement entered pursuant to this decree shall be filed in this cause and become incorporated in this court's decree as fully as if set forth herein."

Thereafter the parties entered into a series of negotiations to work out the terms and conditions of an agreement, as evidenced by four exhibits, being a series of proposed agreements prepared, two by the trustee, and two by the buyer. These negotiations, when terminated, left several areas of disagreement. Some of the unresolved areas of difference are: the terms to be set in regard to the furniture in penthouse "A" pending the disposition of the claim of Mrs. Hodge to it and upon a determination of said claim unfavorable to the trustee; whether the State should mandatorily be required to appeal an unfavorable determination of such claim; a dispute regarding what properties might be regarded as realty; the effect to be accorded a failure to secure a guarantee title policy; the time of delivery of and the taking of possession; the management of the property pending final closing; the date when the inventory should be determined, delivered, and accepted; the procurement of a quitclaim deed to the properties from Mrs. Hodge and the procedures in case she refused to execute same; the delivery of or securing possession of penthouse "A"; and the disposition of receipts from operation and management pending final closing.

The trustee and the buyer were unable to resolve these differences and execute a final agreement. On March 7, 1957, the Attorney General informed the buyer, that unless a final contract was executed by March 15, 1957, no alternative would be left but to set aside the decree and start again to sell the property.

On March 18, 1957, the trustee received a firm offer to purchase the asset for $575,000, from a second buyer.

Subsequently, on March 20, 1957, the trustee filed a motion to modify and to vacate a portion of the decree theretofore entered. The State Treasurer and the Attorney General then moved for rehearing, retrial, modification, or vacation of the decree. The Michigan Typesetting Company moved to strike the motion of the trustee, and filed

answer and a third-party counterclaim for specific performance. Answers filed to the counterclaim asserted that no contract ever existed between the parties. Pursuant to hearing on the motions aforesaid, the circuit court of Sangamon County entered an order vacating the decree of February 26, 1957, so far as it related to the sale of the Esquire Apartment Hotel, granting a retrial and rehearing of the question of private sale of the property, and denying the counterclaim of Michigan Typesetting Company. The same court subsequently entered a decree approving a sale of the property to C. A. Pitts for $575,000. It is from the order vacating and modifying the decree of February 26, 1957, that the Michigan Typesetting Company now prosecutes this appeal, complaining that the circuit court erred in rescinding a judicially approved sale, that the fact that the motion to vacate was filed within the trial term does not mitigate the error, and that the court erred in not enforcing an enforceable contract.

The parties have raised no question as to the original jurisdiction of the circuit court as it may be regarded as stemming from the trust agreement. We find it unnecessary to consider or determine that question because, as we view the matter, whatever may have been the original status, the counterclaim and the reply thereto presented the issues typical of an ordinary action for specific performance, of which the circuit court unquestionably had jurisdiction.

The fundamental question which governs the determination of this cause is whether an enforceable contract exists between the trustee and the Michigan Typesetting Company. To be enforceable the contract must be so definite and so certain in all of its terms that a court can require the specific thing contracted for to be done. The terms must be clear, certain and free from ambiguity and doubt. (*Leach* v. *Hazel*, 398 Ill. 33; *Young* v. *Kowske*, 402 Ill. 114.) It is not necessary that the contract provide for every collateral matter or every possible future contingency which

might arise in regard to the transaction. It is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do. The property must be sufficiently described to identify it, and it must state the price and the terms and conditions of the sale. (*Welsh* v. *Jakstas,* 401 Ill. 288; *Bonde* v. *Weber,* 6 Ill.2d 365.) The parties and price are adequately identified here. However, the facts in evidence indicate that numerous terms and conditions necessary to the closing of a sale of this kind of asset remained undetermined at the time of the vacation of the decree. The parties had continued to negotiate in these several respects, as is indicated by their own acts, and the matters and things in evidence. Possession, inventory, interim management and disposition of interim profits are among the matters undetermined. These factors are material to this contemplated transaction and are necessary to a completed sale. The contract is therefore, not ascertainable in its material terms and conditions. Consequently it is not an enforceable contract.

The Michigan Typesetting Company contends, however, that this is a judicial sale approved by the court, and hence the rules of law relating to judicial sales apply to preclude the vacation of the decree of approval. The decree entered by the circuit court on February 26, 1957, is not a final approval of a judicial sale or any other kind of sale, complete in all of its terms and conditions. The indenture of trust requires that any private sale be approved in advance by the court, and that no order approving such sale could be entered without proof, by testimony, affidavit and such additional evidence as the court may require, that no reasonable likelihood exists of obtaining a higher or fairer price. That decree approved the amount of the sale price offered by the Michigan Typesetting Company, but it specifically found that the parties had not entered into an agree-

ment containing the material terms and conditions of the sale and decreed that such an agreement be entered into. The terms and conditions are not dictated or set forth by the provisions of the decree. It contemplates that the parties will negotiate and agree.

By the very terms of that decree the sale arrangement between the Michigan Typesetting Company and the trustee remained executory. An agreement which does not purport to give an absolute right without further negotiations thereon cannot be specifically enforced. (*Young* v. *Kowske,* 402 Ill. 114.) The counterclaim for specific performance was, therefore, properly denied.

The parties clearly understood that the sale proceedings remained executory after the entry of the decree. The uncontradicted testimony and the number of letters and proposed agreements in evidence clearly demonstrate this fact. Moreover, the trustee informed the purported buyer on March 7, 1957, that unless a final contract was determined and executed not later than March 15, 1957, it would be necessary to set aside the decree and start over again to sell the property. This notice was several days prior to receipt of the second and higher offer to purchase, received by the trustee on March 18, 1957. It thus obviously appears that the receipt of a higher price offer was not the determining factor which prompted the motion to vacate and set aside a part of the decree.

After the entry of the decree of February 26 the parties continued to negotiate in respect to the terms and conditions of the sale; they conferred, made written proposals, and attempted to arrive at an agreement. Appellees admit in their brief that the sale was not completed. They state that the decree appealed from involved no findings of fact which need be disputed. The findings of fact there state the fact to be that no agreement for sale of the asset was ever entered into, and that the trustee at no time executed any writing or made any agreement accepting any specific

offer of the Michigan Typesetting Company, but that the trustee specifically stated in his complaint seeking authority to make private sale that the trustee could not accept the specific offer but intended to enter into an agreement of sale with the company. It is further found that the parties negotiated for a considerable period of time after entry of the decree of February 26, and that that decree specifically contemplated a closing agreement to be entered into in the future.

The sale arrangements here remained executory, numerous specific and material terms and conditions of the sale were undetermined, and the decree did not fix such terms and conditions. The decree did not purport to approve or assent to an executed enforceable sale of any kind. Therefore the question as to whether the rules governing judicial sales would be applicable in case the parties had arrived at a completed sale does not need to be determined here.

The order of the circuit court of Sangamon County is, therefore, affirmed.

*Order affirmed.*