(No. 70587.

ACADEMY CHICAGO PUBLISHERS, Appellant, v. MARY W. CHEEVER, Appellee.

*Opinion filed June 20, 1991.—Rehearing denied September 30, 1991.*

26

CLARK and FREEMAN, JJ., took no part.

Thomas R. Leavens and Marc L. Fogelberg, of Mc-Bride, Baker & Coles, and John Thomas Moran, Jr., all of Chicago, for appellant.

M. Leslie Kite, of Chicago, and Frankfurt, Garbus, Klein & Selz, P.C., of New York, New York (Martin Garbus, Russell Smith and Maura J. Wogan, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

This is a suit for declaratory judgment. It arose out of an agreement between the widow of the widely published author, John Cheever, and Academy Chicago Publishers. Contact between the parties began in 1987 when the publisher approached Mrs. Cheever about the possibility of publishing a collection of Mr. Cheever's short stories which, though previously published, had never been collected into a single anthology. In August

of that year, a publishing agreement was signed which provided, in pertinent part:

"Agreement made this 15th day of August 1987, between Academy Chicago Publishers or any affiliated entity or imprint (hereinafter referred to as the Publisher) and Mary W. Cheever and Franklin H. Dennis of the USA (hereinafter referred to as Author).

Whereas the parties are desirous of publishing and having published a certain work or works, tentatively titled *The Uncollected Stories of John Cheever* (hereinafter referred to as the Work):

\* \* \*

2. The Author will deliver to the Publisher on a mutually agreeable date one copy of the manuscript of the Work as finally arranged by the editor and satisfactory to the Publisher in form and content.

\* \* \*

5. Within a reasonable time and a mutually agreeable date after delivery of the final revised manuscript, the Publisher will publish the Work at its own expense, in such style and manner and at such price as it deems best, and will keep the Work in print as long as it deems it expedient; but it will not be responsible for delays caused by circumstances beyond its control."

Academy and its editor, Franklin Dennis, assumed the task of locating and procuring the uncollected stories and delivering them to Mrs. Cheever. Mrs. Cheever and Mr. Dennis received partial advances for manuscript preparation. By the end of 1987, Academy had located and delivered more than 60 uncollected stories to Mrs. Cheever. Shortly thereafter, Mrs. Cheever informed Academy in writing that she objected to the publication of the book and attempted to return her advance.

Academy filed suit in the circuit court of Cook County in February 1988, seeking a declaratory judgment: (1) granting Academy the exclusive right to pub-

lish the tentatively titled, "The Uncollected Stories of John Cheever"; (2) designating Franklin Dennis as the book's editor; and (3) obligating Mrs. Cheever to deliver the manuscript from which the work was to be published. The trial court entered an order declaring, *inter alia*: (1) that the publishing agreement executed by the parties was valid and enforceable; (2) that Mrs. Cheever was entitled to select the short stories to be included in the manuscript for publication; (3) that Mrs. Cheever would comply with her obligations of good faith and fair dealing if she delivered a manuscript including at least 10 to 15 stories totaling at least 140 pages; (4) Academy controlled the design and format of the work to be published, but control must be exercised in cooperation with Mrs. Cheever.

Academy appealed the trial court's order, challenging particularly the declaration regarding the minimum story and page numbers for Mrs. Cheever's compliance with the publishing agreement, and the declaration that Academy must consult with defendant on all matters of publication of the manuscript.

The appellate court affirmed the decision of the trial court with respect to the validity and enforceability of the publishing agreement and the minimum story and page number requirements for Mrs. Cheever's compliance with same. The appellate court reversed the trial court's declaration regarding control of publication, stating that the trial court erred in considering extrinsic evidence to interpret the agreement regarding control of the publication, given the explicit language of the agreement granting exclusive control to Academy. (200 Ill. App. 3d 677.) Appeal is taken in this court pursuant to Supreme Court Rule 315(a) (134 Ill. 2d R. 315(a)).

The parties raise several issues on appeal; this matter, however, is one of contract and we confine our dis-

cussion to the issue of the validity and enforceability of the publishing agreement.

While the trial court and the appellate court agreed that the publishing agreement constitutes a valid and enforceable contract, we cannot concur. The principles of contract state that in order for a valid contract to be formed, an "offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." (1 Williston, Contracts §§38 through 48 (3d ed. 1957); 1 Corbin, Contracts §§95 through 100 (1963).) Although the parties may have had and manifested the intent to make a contract, if the content of their agreement is unduly uncertain and indefinite no contract is formed. 1 Williston §37; 1 Corbin §95.

The pertinent language of this agreement lacks the definite and certain essential terms required for the formation of an enforceable contract. (*Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306.) A contract "is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." (*Morey v. Hoffman* (1957), 12 Ill. 2d 125.) The provisions of the subject publishing agreement do not provide the court with a means of determining the intent of the parties.

Trial testimony reveals that a major source of controversy between the parties is the length and content of the proposed book. The agreement sheds no light on the minimum or maximum number of stories or pages necessary for publication of the collection, nor is there any implicit language from which we can glean the intentions of the parties with respect to this essential contract term. The publishing agreement is similarly si-

lent with respect to who will decide which stories will be included in the collection. Other omissions, ambiguities, unresolved essential terms and illusory terms are: No date certain for delivery of the manuscript. No definition of the criteria which would render the manuscript satisfactory to the publisher either as to form or content. No date certain as to when publication will occur. No certainty as to style or manner in which the book will be published nor is there any indication as to the price at which such book will be sold, or the length of time publication shall continue, all of which terms are left to the sole discretion of the publisher.

A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract. (*Champaign National Bank v. Landers Seed Co.* (1988), 165 Ill. App. 3d 1090; Restatement (Second) of Contracts §33 (1981).) Without setting forth adequate terms for compliance, the publishing agreement provides no basis for determining when breach has occurred, and, therefore, is not a valid and enforceable contract.

An enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract. (*Midland Hotel*, 118 Ill. 2d at 313.) It is not compelling that the parties share a subjective understanding as to the terms of the contract; the parties' conduct may indicate an agreement to the terms of same. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320.) In the instant case, however, no mutual assent has been illustrated. The parties did not and do not share a common understanding of the essential terms of the publishing agreement.

In rendering its judgment, the trial court supplied minimum terms for Mrs. Cheever's compliance, includ-

ing story and page numbers. It is not uncommon for a court to supply a missing material term, as the reasonable conclusion often is that the parties intended that the term be supplied by implication. However, where the subject matter of the contract has not been decided upon and there is no standard available for reasonable implication, courts ordinarily refuse to supply the missing term. (1 Williston §42; 1 Corbin §100.) No suitable standard was available for the trial court to apply. It is our opinion that the trial court incorrectly supplied minimum compliance terms to the publishing agreement, as the agreement did not constitute a valid and enforceable contract to begin with. As noted above, the publishing agreement contains major unresolved uncertainties. It is not the role of the court to rewrite the contract and spell out essential elements not included therein.

In light of our decision that there was no valid and enforceable contract between the parties, we need not address other issues raised on appeal. For the foregoing reasons, the decisions of the trial and appellate courts in this declaratory judgment action are reversed.

*Reversed.*

JUSTICES CLARK and FREEMAN took no part in the consideration or decision of this opinion.