**Michael WILKES, Plaintiff,**

v.

**ACCUSTAFF, INC. Defendants.**

**No. 98 C 0465.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 22, 1999.

Jeffrey B. Fawell, Fawell, Fawell & Kavvadias, Wheaton, IL, Timothy A. Armstrong, Armstrong & Armstrong, P.C., Wheaton, IL, for Plaintiff.

Mark A. Casciari, Jill Susan Vorobiev, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER·

BUCKLO, District Judge.

Michael Wilkes brought this breach of contract action against AccuStaff, Inc. ["AccuStaff"]. AccuStaff moves for summary judgment. For the following reasons, summary judgment in favor of AccuStaff is granted.

### Background

In June 1989, Mr. Wilkes was hired by BSI Temporaries of Illinois, Inc. ["BSI"] to start up a Bensenville, Illinois office for BSI. At that time David G. Richardson was the president of BSI. In a letter dated June 7, 1989, Mr. Richardson confirmed Mr. Wilkes' hiring, set forth his salary, and provided the following regarding stock options:

> The equity position that I am proposing is as follows. We will negotiate a level that we can agree on that we should reach in June 1994. If we are within 90% or better in that objective, (the objective in this case will take in both sales dollars and bottom line net profit) you should be given 5% of the stock in [BSI]. In June of 1994, we will negotiate an objective to reach in June 1999. If that objective is met, you will have an option to purchase an[ ] additional 5% at the value of the stock in June 1994. This incentive is intended to give you value for that extra effort that is needed to build a successful organization.

This letter is signed by Mr. Richardson.

In the end of October 1989, Mr. Richardson's attorney drafted an "Option to Purchase Stock" agreement [the "Agreement"]. The Agreement provides that in five years from the date of the Agreement, Mr. Wilkes would have an option to purchase for book value, or $1.00 per share, 5% of the stock of the corporation, provided that Mr. Wilkes met the projections set forth in "Exhibit A." In ten years, Mr. Wilkes would have the right to purchase an additional 5% of the total stock of the corporation, providing that he met the projections set forth in "Exhibit B." Exhibits A and B are not attached to the Agreement and are not in the record. .

The copy of the Agreement attached to the complaint is not signed by either Mr. Wilkes or a representative of BSI. In 1992, BSI merged with several other companies to create AccuStaff. In 1996, Mr. Richardson was killed in a boating accident. Mr. Wilkes alleges that he met the conditions of the Agreement and is entitled to purchase 5% of the stock of AccuStaff, a publicly traded corporation, according to the terms of the Agreement. AccuStaff moves for summary judgment, arguing that the Agreement Mr. Wilkes seeks to enforce lacks essential terms and violates the statute of frauds. Mr. Wilkes argues that the June 1989 letter from Mr. Richardson contains the necessary signature, that handwritten notes provide the necessary terms, and that in any case he fully performed the contract.

### Choice of Law

Mr. Wilkes originally filed his complaint in Illinois state court; AccuStaff removed the case to federal court based on diversity of citizenship. Both parties assume that Illinois law applies to this breach of contract action.[1] This assump-

---

1. AccuStaff and Mr. Wilkes both refer to Illi-

nois case law and statutes in support of their

tion raises an unusual question of choice of law, for the Agreement states that it "shall be governed and construed in accordance with the laws of the State of Maryland." A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995). In the area of contract law, Illinois courts apply the "most significant contacts" test. *Id.* at 1115. The relevant contacts include the place of negotiating, contracting, performance, location of the subject matter, and residence of the parties. *Id.* Illinois courts also generally uphold choice-of-law provisions in contracts. *Vencor, Inc. v. Webb,* 33 F.3d 840, 844 (7th Cir.1994).

In *Wood v. Mid–Valley Inc.,* 942 F.2d 425 (7th Cir.1991), the court was presented the question of which state's law to apply where both parties assumed that Indiana law governed the substantive issues. Finding that such a situation is procedural rather than substantive, the court held: "The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Id.* at 426. Therefore the court applied Indiana law. In *Wood,* however, there was not a choice-of-law provision in the contract. In *Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212 (7th Cir.1997), the parties assumed that New Jersey law supplied the law for the case despite a choice-of-law provision in the guarantees at issue providing for the application of New York law. *Id.* at 1215. The court applied New Jersey law, noting that the parties perhaps assumed that New Jersey law applied because most of the contacts were with New Jersey. *Id.*

 The Agreement that is part of the record in this case was negotiated in Illinois. When the Agreement was drafted, BSI was a Maryland corporation with its principal place of business in Illinois, while Mr. Wilkes was (and is) an Illinois resident. Mr. Wilkes was hired by Mr. Richardson in Illinois to work in the Bensenville, Illinois office of BSI. The subject matter and performance of the contract were in Illinois. In addition, the company into which BSI merged in 1992, AccuStaff, is a Florida corporation, with its principal place of business in Florida. Mr. Wilkes demanded the stock from AccuStaff in 1994. Thus Maryland has no interest in this lawsuit. Where there is an insufficient connection between the contract and the state designated by the parties, Illinois courts would not honor the parties' designation of that state's law. *Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 948 (7th Cir. 1994). The parties assume that Illinois law governs, there are substantial contacts between the Agreement and Illinois, and Maryland has no interest in a dispute between an Illinois resident and a Florida corporation. Therefore I will apply Illinois law to the substantive issues.

### Summary Judgment

 The Agreement that is the subject of this lawsuit could not have been performed within one year. According to its express terms, Mr. Wilkes was not eligible for a stock option until five years from the date of the Agreement. The Illinois statute of frauds provides that an agreement that is not to be performed within one year shall be in writing and signed by the party to be charged. 740 ILCS 80/1 (West 1993). In addition, to satisfy the Illinois statute of frauds a writing must contain the agreement's essential terms. *Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir.1992). Regardless of the statute of frauds, to form a valid contract the terms must be sufficiently definite to allow a court " 'to ascertain what the parties have agreed to do.' " *Academy Chica-*

arguments regarding contract law. AccuStaff mentions Maryland corporation law only with respect to its argument that the Board of

Directors of BSI did not authorize the issuance of stock to Mr. Wilkes.

go Publishers v. Cheever, 144 Ill.2d 24, 578 N.E.2d 981, 983, 161 Ill.Dec. 335, 337 (1991) (quoting Morey v. Hoffman, 12 Ill.2d 125, 145 N.E.2d 644, 648 (1957)).

■ It is not necessary to evaluate whether the June 1989 letter satisfies the signature requirement of the statute of frauds in order to determine that the Agreement cannot be enforced. Neither the letter nor the Agreement contain an indication of Mr. Wilkes' obligations under the contract. The June 1989 letter states that Mr. Wilkes would be given stock in five years if he reached 90% of an objective that still needed to be negotiated. The Agreement states that Mr. Wilkes could purchase stock in five years if he met the projections set forth in Exhibit A, which is not in the record. According to Mr. Wilkes, at a 1989 Christmas party Mr. Richardson gave him a five-year goal of 90% of $7,217,247.00. In support of this contention, Mr. Wilkes submitted a piece of paper at the top of which there are handwritten notes of years and figures. The handwritten notes do not refer to any agreement or to any individual.

The only testimony Mr. Wilkes has supplied regarding the handwritten notes is his own affidavit. In his affidavit, Mr. Wilkes states that at the 1989 Christmas party, Mr. Richardson gave him the goals that he was to achieve to become eligible for the stock option. Notably absent from Mr. Wilkes' affidavit, however, is a description of those goals or an indication of whose handwriting is on the piece of paper. In fact, Mr. Wilkes' affidavit does not mention the handwritten notes. The evidence relied upon to defeat a summary judgment motion must be "competent evidence of a type otherwise admissible at

trial." Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996).[2]

■ Moreover, Mr. Wilkes has not demonstrated that he complied with the goals. In his response to the motion for summary judgment, Mr. Wilkes cites to allegations in his complaint stating that he performed everything required of him to activate the stock option, including generating in excess of $7,439,928.00 in sales revenue. His affidavit does not state that he met these goals. Where the nonmoving party bears the burden of proof at trial, that party may not rest on allegations in the pleadings to show that there is a genuine issue requiring trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Without knowing what Mr. Wilkes needed to do to be eligible for the stock option, it is impossible to ascertain whether he fulfilled his part of the bargain; without some evidence that Mr. Wilkes fulfilled his part of the bargain, there is no issue of fact requiring trial. Therefore summary judgment in favor of AccuStaff is granted.

### Conclusion

For the reasons discussed above, AccuStaff's motion for summary judgment is granted.

---

2. In addition, pursuant to Fed.R.Evid. 601, testimony by Mr. Wilkes regarding Mr. Richardson's statements at the 1989 Christmas party appears to be barred by the Illinois Dead Man's Act, which provides in relevant part that a party "who has contracted with an agent of the adverse party—the agent having since died—shall not be a competent witness as to any admission or conversation between himself" and the agent. 735 ILCS 5/8–301 (West 1993).