NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220703-U

NO. 4-22-0703

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 30, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JOHN BERNARDI, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Jo Daviess County |
| PARK AVENUE RARITIES, INC., | ) | No. 19LM38 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Kevin J. Ward, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, concluding plaintiff had not established any error with respect to the various challenged rulings of the trial court.

¶ 2     In July 2019, plaintiff, John Bernardi, received a telephone call from an employee of defendant, Park Avenue Rarities, Inc. The call concerned an opportunity for plaintiff to purchase silver coins from defendant. Following another phone call, defendant prepared a purchase invoice and charged plaintiff's credit card $3900. Plaintiff, upon receipt of the purchase invoice, disputed the transaction on the basis it was inconsistent with the terms previously discussed. As a result, defendant canceled the purchase order and credited plaintiff's credit card $3900.

¶ 3     In October 2019, plaintiff commenced a civil action against defendant based upon the previous dealings. Plaintiff alleged defendant's actions constituted a breach of contract and consumer fraud. After a bench trial, judgment was entered in defendant's favor.

¶ 4     Plaintiff appeals, arguing trial court erred in (1) ruling in favor of defendant

following the trial, (2) denying him leave to amend his Illinois Supreme Court Rule 222 affidavit (Ill. S. Ct. R. 222 (eff. Jan. 1, 2011)), (3) denying him partial summary judgment, and (4) refusing to treat facts admitted in the verified pleadings as evidence at trial. We affirm.

¶ 5                          I. BACKGROUND

¶ 6                    A. Amended Complaint and Answer

¶ 7        In an amended verified complaint, plaintiff alleged claims against defendant for breach of contract and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2018)). Defendant filed a verified answer, which, amongst other things, admitted certain factual allegations in plaintiff's complaint.

¶ 8                          B. Rule 222 Affidavit

¶ 9        Shortly after the filing of the initial complaint, plaintiff filed a Rule 222 affidavit stating the total money damages sought did not exceed $50,000. Plaintiff later moved to amend the affidavit to state the total money damages sought exceeded $50,000. In his motion, plaintiff asserted his original statement was based upon a mistake of fact and law. Following a hearing, the trial court, after noting the administrative issues that would be caused by allowing such an amendment, denied plaintiff's motion but indicated plaintiff could, if he chose to do so, file a new complaint seeking damages in excess of $50,000. Plaintiff later moved to reconsider the denial. Following a hearing, the court, again noted the administrative issues allowing such an amendment would cause, as well as the absence of a showing of good cause for the amendment, denied plaintiff's motion.

¶ 10               C. Motion for Partial Summary Judgment

¶ 11       Prior to trial, plaintiff moved for partial summary judgment with respect to the breach-of-contract claim. Plaintiff asserted he was entitled to summary judgment based upon the

undisputed facts. Following a hearing, the trial court denied plaintiff's motion. Plaintiff later moved to reconsider the denial, which, following a hearing, the court also denied..

¶ 12                                    D. Bench Trial

¶ 13            In June 2022, the trial court conducted a bench trial. Plaintiff presented testimony from himself and an expert witness, as well as multiple exhibits. Defendant, in turn, presented testimony from Dean Spitaleri, its president and owner. Following the trial, the court entered a comprehensive eight-page written judgment. The written judgment (1) addressed an evidentiary matter that arose during the trial, (2) summarized the relevant facts gleaned from the evidence presented, and (3) set forth an application of the law to the facts.

¶ 14                                    1. *Evidentiary Matter*

¶ 15            At the commencement of the trial, plaintiff presented to the trial court certain factual allegations from his amended complaint that were admitted in the answer from defendant. Plaintiff asked the court to take notice there was no dispute of fact with respect to those admitted allegations. While the court initially expressed reservations with plaintiff's request, it later, in its written judgment, granted the request. The court stated:

> "Defendant's (verified) [a]nswer *** admits the allegations of paragraphs 1, 2, 3, 4, and 11 of the [c]omplaint. Plaintiff specifically requests that the court note that, as a result, there is no dispute of fact as to said allegations, and the court will do so."

¶ 16                          2. *Facts Gleaned From the Evidence Presented*

¶ 17            The trial court provided the following summary of the facts gleaned from the evidence presented. In doing so, the court noted (1) the "witnesses were credible," (2) there was "very little direct dispute of fact," and (3) "the parties' real difference is as to the legal conclusions

to be drawn from the facts."

¶ 18    In July 2019, the spot price of silver was approximately $15.61, the retail value of a standard/uncertified Silver Eagle coin was between 2% and 7% over spot price, and the market value of a 2019 certified MS 70 Silver Eagle coin was between $45 and $50.

¶ 19    On July 17, 2019, plaintiff received a phone call from Daniel Noble, a salesman for defendant. According to plaintiff, the conversation was lengthy and far-ranging but, as to the claims made by plaintiff, Noble indicated defendant would sell plaintiff 2019 certified MS 70 Silver Eagle coins for $13 per coin. After hearing this offer, plaintiff expressed surprise because, although he did not then know the precise spot price of silver, he suspected the proposed purchase amount was below the coin's bullion value and far below the market value of a 2019 certified MS 70 Silver Eagle coin. We note plaintiff specifically testified he was "shocked" by the offer. Noble explained he was able to make such a sale because the coins came from an estate sale. Noble also suggested plaintiff qualified to use a $650 gift certificate against any purchase. Plaintiff testified he had "no idea why [he] would have a [$650] gift certificate with [defendant]" and the gift certificate made him "very, very, very suspicious of [Noble]." Plaintiff asked to purchase a "monster box," which plaintiff asserted was a trade term meaning 500 coins. To this, Noble responded, if plaintiff used a Discover card, he would get an additional 2% discount. Plaintiff did not then have a Discover card, so the call concluded with the understanding plaintiff would obtain a Discover card and then reconnect with Noble.

¶ 20    Plaintiff obtained a Discover card and then reconnected with Noble. Plaintiff told Noble he had obtained a Discover card, but the credit limit was an amount insufficient to make the discussed purchase. Noble told plaintiff to give him the Discover card number and the remaining payments could be made in installments. Plaintiff conveyed the card number and requested an

invoice. Plaintiff testified Noble stated, even though there had not been a full payment, he would send the "entire order" to plaintiff, a statement which plaintiff found concerning. We note one of plaintiff's exhibits indicates plaintiff's Discover account was charged $3900 on July 25, 2019.

¶ 21 On July 26, 2019, plaintiff called Noble and reported he had not received an invoice. Noble indicated a secretary would send him one .

¶ 22 On July 30, 2019, plaintiff received an invoice. To plaintiff's understanding, the invoice deviated significantly from the terms previously discussed. Specifically, there was a charge of $3900 for a "mini monster box" of 100 coins, charging $39 a coin as opposed to $13 a coin. The invoice, which was admitted into evidence, contains no reference to the condition or the year of the coins. Plaintiff formed the belief the coins contemplated by the invoice were "standard" and not certified MS 70s and, therefore, grossly overpriced. The invoice contained an additional $3900 charge qualified with "to follow after next payment."

¶ 23 Because plaintiff found the invoice was glaringly different than the sales terms as he understood them, he made numerous efforts to have further discussions with representatives of defendant. Ultimately, he spoke with John Stevens, a manager for defendant. Plaintiff testified Stevens claimed the conversations between plaintiff and Noble had been recorded and plaintiff was wrong in his assertions as to the terms of the sale. Stevens offered plaintiff uncertified Silver Eagle coins at the price of $17 per coin. Plaintiff sought further time to consider that option and then later made numerous fruitless efforts to communicate with Stevens.

¶ 24 Dean Spitaleri testified (1) Noble was not authorized to sell Silver Eagle coins on July 17, 2019, at $13 a coin; (2) defendant does not use gift certificates with new customers, nor does it provide discounts for the use of particular credit cards; (3) Noble was not trained by defendant to use such tactics; and (4) defendant did not record conversations between its customers

and salespeople. Spitaleri further testified he spoke with Noble and Stevens and then promptly canceled the purchase order and credited plaintiff's credit card $3900. We note one of plaintiff's exhibits indicates a $3900 credit on plaintiff's Discover account had a "Trans. Date" of "Jul 31" and a "Post Date" of "Aug 4."

¶ 25                               3. *Application of the Law to the Facts*

¶ 26        The trial court, after conducting an application of the law to the facts, ruled in favor of defendant on each claim raised in plaintiff's amended complaint.

¶ 27        With respect to plaintiff's breach-of-contract claim, the trial court initially found plaintiff had not proven the existence of an oral contract. The court stated:

> "Here, [p]laintiff contends that, through [Noble], [d]efendant's offer[ ] to sell [p]laintiff MS 70 Silver Eagle coins, mint year 2019, for $13/coin, including application of a $650 gift certificate credit and a 2% discount for a Discover card purchase, was accepted by him. However, even assuming that these were, in fact, the terms of the conversation of [July 17, 2019], there is no indication of assent as to how long, or on what terms, such offer would remain open or as to whether payment would be required in lump sum or otherwise. In other words, the evidence does not show an acceptance by [p]laintiff, on [July 17, 2019], in every respect exactly meeting and corresponding with the offer at all points, unequivocally. As such, the necessary elements of offer and acceptance and definite and certain terms are not shown by the evidence, so no contract is proved."

The court further found, even if plaintiff had proven the existence of an oral contract, (1) Noble "was not authorized to enter into any contract on those terms" and (2) defendant did not "retain any benefit of the transaction," "take a position inconsistent with non[-]affirmation," or "ratify the purported contract."

¶ 28 As for plaintiff's consumer-fraud claim, the trial court found, "[a]pplying the rationale of [*Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 2016 IL App (2d) 151053, ¶¶ 22-23, 61 N.E.3d 1155], to the instant matter: there was no evidence [p]laintiff suffered any [actual] damages," an essential element for a private consumer-fraud claim. The court stated:

> "Here, *** plaintiff is in the same position he was in before he received [Noble's] call. The alleged damages he seeks would not compensate him for any actual loss but instead would constitute an improper windfall."

¶ 29 E. Postjudgment Motion

¶ 30 Plaintiff filed a timely postjudgment motion raising the various contentions of error he now pursues on appeal. According to a docket entry, the parties appeared before the trial court on the motion, and the court denied the motion. The record on appeal contains no transcript or bystander's report related to that appearance.

¶ 31 This appeal followed.

¶ 32 II. ANALYSIS

¶ 33 On appeal, plaintiff argues the trial court erred in (1) ruling in favor of defendant following the trial, (2) denying him leave to amend his Rule 222 affidavit, (3) denying him partial summary judgment, and (4) refusing to treat facts admitted in the verified pleadings as evidence

- 7 -

at trial. Defendant has elected not to participate in this appeal. We address each of plaintiff's arguments in turn, albeit in a different order from which they have been presented by plaintiff. See *In re Marriage of Takata*, 383 Ill. App. 3d 782, 787, 890 N.E.2d 688, 692 (2008) (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 345 N.E.2d 493, 495 (1976)) ("When an appellee fails to file a brief, reviewing courts will decide the merits of the appeal if the record is simple and the errors can be easily decided without the aid of an appellee's brief.").

¶ 34                          A. Rule 222 Affidavit

¶ 35         Plaintiff argues the trial court erred in denying him leave to amend his Rule 222 affidavit. Specifically, plaintiff argues the court erred in adopting a novel procedure requiring litigants to file a new complaint rather than amend a Rule 222 affidavit. Plaintiff has not established error. "It is well established that, on appeal, the party claiming error has the burden of showing any irregularities that would justify reversal." *In re Linda B.*, 2017 IL 119392, ¶ 43, 91 N.E.3d 813. While the court initially indicated it would not allow an amendment to the Rule 222 affidavit for administrative reasons, it later, during the hearing on the motion to reconsider, indicated it would also not allow the amendment because plaintiff had not made a showing of good cause. Plaintiff, before this court, does not address the court's finding of an absence of good cause, a basis which, by itself, would justify a denial of a motion to amend. See Ill. S. Ct. R. 222 (eff. Jan. 1, 2011) ("Any such affidavit may be amended or superseded prior to trial pursuant to leave of court for good cause shown, and only if it is clear that no party will suffer any prejudice as a result of such amendment."). Accordingly, we reject plaintiff's argument.

¶ 36                      B. Partial Summary Judgment

¶ 37         Plaintiff argues the trial court erred in denying him partial summary judgment.

Specifically, plaintiff argues the court erred in finding there were material facts in dispute with respect to his breach-of-contract claim. Plaintiff has not shown the issue is subject to review. "As a general rule, when a motion for summary judgment is denied and the case proceeds to trial, the denial of summary judgment is not reviewable on appeal because the result of any error is merged into the judgment entered at trial." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 355, 770 N.E.2d 177, 196 (2002). Plaintiff has not identified, nor do we find, any applicable exception to this general rule. Accordingly, we reject plaintiff's argument.

¶ 38                            C. Notice of the Admitted Allegations

¶ 39        Plaintiff argues the trial court erred in refusing to treat facts admitted in the verified pleadings as evidence at trial. Plaintiff's argument is premised on a factual assertion that is refuted by the record. While the court initially expressed reservations with plaintiff's request to take notice of the admitted allegations, the court later, in its written judgment, granted plaintiff's request. Accordingly, we reject plaintiff's argument.

¶ 40                            D. Ruling on the Consumer-Fraud Claim

¶ 41        Plaintiff argues the trial court erred in ruling in favor of defendant on the consumer-fraud claim. Specifically, plaintiff argues the court erred in finding he "failed to prove the existence of a contract with the [d]efendant which would have entitled [him] to monetary damages." Plaintiff has not established error. First, the court, as a matter of fact, did not rule in favor of defendant because plaintiff failed to prove the existence of a contract; instead, the court ruled in favor of defendant because it found, even if a contract existed, plaintiff had not sustained actual damages, an undisputedly essential element for a private consumer-fraud claim. Moreover, plaintiff does not address *Burkhart*, the case upon which the court explicitly relied in reaching its finding. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80, 987 N.E.2d 1 ("This court is not a

depository in which the burden of argument and research may be dumped."). Accordingly, we reject plaintiff's argument.

¶ 42                             E. Ruling on the Breach-of-Contract Claim

¶ 43        Plaintiff argues the trial court erred in ruling in favor of defendant on the breach-of-contract claim. Specifically, plaintiff argues the court erred in finding (1) the evidence did not establish the existence of a valid and enforceable oral contract and (2) defendant's return of the payment and nonratification of the contract precluded liability.

¶ 44        To prevail on a breach-of-contract claim, a plaintiff must prove, amongst other things, the existence of a valid and enforceable contract. *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. "Included in the formation of a valid contract are offer and acceptance, consideration, and definite and certain terms." *Zirp-Burnham, LLC v. E. Terrell Associates, Inc.*, 356 Ill. App. 3d 590, 600, 826 N.E.2d 430, 439 (2005). "The acceptance must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand." *Mike Schlemer, Inc. v. Pulizos*, 267 Ill. App. 3d 393, 395, 642 N.E.2d 200, 202 (1994). The terms will be deemed definite and certain where a court, under proper rules of construction and applicable principles of equity, can ascertain what the parties have agreed to do. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 29, 578 N.E.2d 981, 983 (1991).

¶ 45        In this case, the trial court ruled in favor of defendant based upon its finding plaintiff had not established the existence of an oral contract. Even considering the court's finding under the *de novo* review advocated for by plaintiff, we find plaintiff has not established error. As the court found, even assuming Noble had made the alleged offer to plaintiff on July 17, 2019, plaintiff did not unequivocally accept the offer that day. Instead, plaintiff, in an attempt to benefit from a

discount, ended the conversation to pursue obtaining a Discover card. The evidence further does establish the creation of an oral contract in the days that followed the initial conversation. The evidence showed plaintiff reconnected with Noble after obtaining a Discover card. At that point, plaintiff informed Noble the credit limit on his Discover card was insufficient to make the previously discussed purchase. Without further discussing the terms of the purchase, Noble told plaintiff to give him the Discover card number and the remaining payments could be made in installments. Plaintiff conveyed the card number and requested an e-mail invoice. The invoice provided to plaintiff shortly thereafter contained terms with which plaintiff did not agree. Based upon this evidence, we cannot say the terms of any agreement were definite and certain. We find no error with respect to the finding plaintiff failed to establish the existence of an oral contract. Accordingly, we reject plaintiff's argument and need not consider the court's alternative reasons for ruling in favor of defendant on the breach-of-contract claim.

¶ 46                                    III. CONCLUSION

¶ 47            For the reasons stated, we affirm the trial court's judgment. In doing so, we thank the court for its comprehensive written judgment, which we found helpful in resolving the issues presented in this appeal.

¶ 48            Affirmed.