# Illinois Official Reports

## Appellate Court

---

### *Elleby v. Forest Alarm Service, Inc.*, 2020 IL App (1st) 191597

---

| | |
|---|---|
| Appellate Court Caption | RUTH ELLEBY, Plaintiff-Appellant, v. FOREST ALARM SERVICE, INC., LINDA LICHTENAUER, MARK COYLE, and RON LYNGEN, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>No. 1-19-1597 |
| Filed | March 6, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-12724; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James L. Wideikis, Shawn M. Staples, and Jonathan L. Loew, of Much Shelist P.C., of Chicago, for appellant.<br><br>David J. Stein and Jiwon J. Yhee, of Masuda, Funal, Eifert & Mitchell, Ltd., of Chicago, for appellee Forest Alarm Service, Inc.<br><br>Paul F. Markoff and Karl G. Leinberger, of Markoff Leinberger LLC, of Chicago, for other appellees. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Rochford and Delort concurred in the judgment and opinion.


**OPINION**


¶ 1    The plaintiff, Ruth Elleby, appeals from orders of the circuit court of Cook County that (1) dismissed her claims against defendants Linda Lichtenauer, Mark Coyle, and Ron Lyngen (collectively, the individual defendants) and (2) entered judgment on the pleadings in favor of defendant Forest Alarm Service, Inc. (FASI). For the reasons that follow, we affirm.

¶ 2    The following facts relevant to the disposition of this appeal were adduced from the pleadings and exhibits of record.

¶ 3    FASI is an Illinois corporation that provides security alarm sales, service, installation, and monitoring. According to the plaintiff, FASI is a "family-owned, closely held corporation." The individual defendants, along with the plaintiff, are shareholders of FASI. Lichtenauer and the plaintiff each own 33.5% of the shares, and Lyngen and Coyle each own 16.5% of the shares. Coyle, in addition to being a shareholder of FASI, is also the president and secretary of FASI.

¶ 4    In 2017, the plaintiff considered selling her shares of FASI. On August 16, 2017, the plaintiff's attorney sent Coyle a letter, indicating that the plaintiff had decided to "exercis[e] her rights under the Illinois Business Corporation Act *** to have the Corporation and/or its shareholders purchase her shares." The letter stated that the plaintiff was willing to sell her shares at a price based on a 2013 valuation of FASI.

¶ 5    On October 19, 2017, an attorney representing the individual defendants responded, disputing that the "Illinois Business Corporation Act" provided the plaintiff with a right to force them to purchase her shares. The letter stated that, nonetheless, the individual defendants were willing to purchase the plaintiff's shares for a $178,177 or, alternatively, sell their shares to her using the 2013 valuation.

¶ 6    On November 14, 2017, the plaintiff's attorney sent an e-mail to the individual defendants' attorney, requesting that certain FASI records "be produced within 14 days" so the plaintiff could adequately respond to their offer. The requested records included, *inter alia*, client lists, profit and loss statements, balance sheets, and "any and all personal Credit Card Statements, belonging to [the individual defendants] that have been used to pay FASI invoices."

¶ 7    On January 15, 2018, the plaintiff's attorney sent a letter to the attorney representing the individual defendants, noting that the plaintiff had not received a response to her demand for records. The letter also alleged that the plaintiff's "access to the on-line company financial and banking records" had been blocked and that the plaintiff "discovered several unauthorized and wasted expenditures made by the Company to Macy's Department Store." The letter further alleged that the plaintiff discovered "several questionable alarm part expenditures, unauthorized bonus payments, unexplained credit card purchases and sales of company vehicles," and that "FASI client contracts are inexplicably being transferred or terminated." The letter concluded by stating that the plaintiff was willing to sell her shares for the price of $450,000.00 and gave the individual defendants 14 days to respond.

¶ 8     Subsequently, the plaintiff hired a new attorney who, on August 17, 2018, sent a letter to the individual defendants' attorney, demanding again "the production of FASI's books and records pursuant to 805 ILCS 5/7.75." The letter stated that the records were being requested by the plaintiff's "forensic accountant and business valuator" and threatened to "utilize the legal system" if the records were not produced. Attached to the letter was a three-page list of the records that the plaintiff demanded be produced. The letter also asked the individual defendants' attorney to clarify whether he represented FASI or the individual defendants.

¶ 9     On August 25, 2018, the individual defendants' attorney responded and confirmed that, as he stated in his initial communication, he represented only the individual defendants, not FASI. Regarding the plaintiff's threat to "utilize the legal system" if the records were not produced, the individual defendants' attorney noted that the plaintiff had not yet directed any of her demands for records to FASI. He also opined that her document demand was "well beyond anything authorized by 805 ILCS 5/7.75." He reiterated though that, because he represented the individual defendants and not FASI, the plaintiff's demand for FASI records was "not [his] issue." The letter also stated that the individual defendants were willing to "discuss a resolution based on a real and current valuation" of FASI.

¶ 10    On August 28, 2018, the plaintiff's attorney sent a letter to Coyle, in his capacity as both "President and Registered Agent" of FASI, and demanded "the production of FASI's books and records pursuant to 805 ILCS 5/7.75." The letter included the three-page attachment listing the records the plaintiff wished produced. The letter demanded that FASI produce the records "no later than October 1, 2018."

¶ 11    On October 1, 2018, Frank Cesario, FASI's certified public accountant (CPA), sent an e-mail to the plaintiff, Coyle, and Lichtenauer. Attached to the e-mail was a document that Cesario called the "financial statement for [FASI] through August 31, 2018." The attachment included a balance sheet and a profit and loss statement.

¶ 12    On October 3, 2018, Cesario sent another e-mail to the plaintiff and the individual defendants. This e-mail included additional financial documents, including a profit and loss statement that compared the months of January through August for both 2017 and 2018 and general journal transactions dated August 31, 2018.

¶ 13    On October 10, 2018, Coyle sent an e-mail to the plaintiff, Lyngen, and Lichtenauer, attaching the FASI "financial reports" for 2017. The following reports were included: general and administrative expenses, costs of goods sold, statement of income and retained earnings, and a balance sheet.

¶ 14    On October 11, 2018, the plaintiff filed a two-count complaint against the individual defendants and FASI.[1] Count I alleged that FASI and the individual defendants violated section 7.75 of the Business Corporation Act of 1983 (Act) (805 ILCS 5/7.75(d) (West 2018)) by refusing her "numerous requests" for FASI's books and records. Pursuant to section 7.75(d) of the Act (id.), the plaintiff also sought to hold the individual defendants liable for 10% of the value of her stock in FASI, damages, and attorney fees for refusing her request to examine the records. In support of her claim, the plaintiff attached copies of the e-mails and letters detailed above. Count II alleged that the individual defendants breached the fiduciary duties they owed to FASI and to her. Specifically, the plaintiff alleged that the individual defendants breached

_____

[1]The original complaint also included Christina Pavia as a defendant, but she was not named as a defendant in the amended complaint.

their fiduciary duty by failing to produce the financial records and books she requested, engaging in corporate waste and self-dealing, and by freezing the plaintiff out of the management and control of FASI.

¶ 15 On October 26, 2018, the individual defendants filed a motion to dismiss the plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)). The individual defendants raised the following arguments: (1) count I was not ripe because section 7.75(b) of the Act (805 ILCS 5/7.75(b) (West 2018)) provides her with the right to "examine, in person or by agent, at any reasonable time" FASI's books and records and she has alleged only that she demanded the "production" of such records, (2) the plaintiff's complaint failed to allege that she brought her claim derivatively on behalf of FASI, (3) the plaintiff failed to allege facts establishing a fiduciary duty because FASI is not a closely held corporation nor is it governed by a shareholder agreement, (4) the plaintiff's complaint failed to plead facts that established conduct that amounted to a breach of fiduciary duty, and (5) the plaintiff failed to allege damages.

¶ 16 On November 11, 2019, FASI filed a motion to dismiss the plaintiff's only claim against it, count I, pursuant to section 2-615 of the Code. FASI's motion adopted and incorporated the individual defendants' argument from their motion to dismiss regarding count I.

¶ 17 On January 29, 2019, the circuit court entered an order giving the plaintiff 14 days to amend her complaint.

¶ 18 On February 15, 2019, the plaintiff filed an amended complaint, seeking relief both individually and derivatively on behalf of FASI. Count I still alleged that the individual defendants and FASI violated section 7.75(d) of the Act (*id.* § 7.75(d)) by refusing her "numerous requests" for FASI's books and records, attaching copies of the e-mails and letters detailed above. The plaintiff amended count II to reflect that she brought the claim derivatively on FASI's behalf. The plaintiff also alleged that "[d]emand on the Board of Directors of [FASI] to bring this suit against the individual defendants herein would be a futile and useless act, in that defendants committed the wrongs complained of herein, have profited from the wrongs, and defendants would not bring suit against themselves." In count II, she alleged that the individual defendants breached their fiduciary duties. Specifically, she alleged that the individual defendants breached their fiduciary duties in the following ways: (1) "freezing" her out of FASI by "blocking [her] access to [FASI's] on-line financial and banking records," denying her "the ability to participate in the operation and management of" FASI, and denying her access to FASI's books and records; (2) "unauthorized and wasted expenditures made by [FASI] to Macy's Department Store;" (3) "several questionable alarm part expenditures;" (4) "unauthorized bonus payments;" (5) "unexplained credit card purchases and sales of [FASI] vehicles;" (6) terminating or transferring client contracts; and (7) "preparing balance sheet entries that evidence potentially improper distributions or inadequate bookkeeping." In support of her claims, the plaintiff attached a copy of an unsigned shareholder agreement that included in the margins handwritten addendums and Microsoft Word comments. According to the plaintiff, the shareholders "did not formally execute or sign [FASI's] Shareholder Agreement" but "everyone operated under the document as if it were fully executed." In support of her claim that there were unauthorized expenditures at Macy's Department Store, the plaintiff attached bank records that she claimed were from FASI's checking account with entries that state "Auto Pymt Macys" and "CITIAUTFDR."

¶ 19      On April 1, 2019, the individual defendants again filed a motion to dismiss pursuant to section 2-615 of the Code. Regarding count I, they once more argued that the plaintiff alleged only that she demanded the "production" of books and records from FASI, not that she ever demanded to "examine" FASI's books and records. As such, the individual defendants argued that the plaintiff failed to allege they ever refused a request to examine FASI's books and records. Regarding count II, the individual defendants argue that the plaintiff failed to allege that she made a demand on FASI's board of directors to bring suit or why demand was excused, the existence of a fiduciary duty, or sufficient facts to show that the alleged conduct amounted to a breach of fiduciary duties.

¶ 20      On June 13, 2019, the circuit court granted the individual defendants' motion to dismiss as to both counts of the plaintiff's amended complaint. As to count I, the circuit court held that the plaintiff "had no right to the production of the records she sought, merely the right to examine them," and the plaintiff did not allege that she ever made a request to examine the records in person that was denied. The court also held that the plaintiff did not allege any facts showing the Lichtenauer or Lyngen had any control over FASI's records or that they refused any request for access to the records on behalf of FASI. As to count II, the circuit court first noted that, because the plaintiff was raising a derivative claim, she was required to allege particularized facts showing that she made a demand on the corporation to bring suit and was refused or that she should be excused from making such a demand. The court held that the plaintiff's conclusory statement that "demand would be futile" was insufficient. Moreover, the court held that, although the plaintiff sufficiently alleged that the individual defendants owed FASI and each other a fiduciary duty, the plaintiff failed to allege sufficient facts "from which it can be concluded that any of the conduct at issue constitutes a breach of fiduciary duty." Specifically, the court held the following: the individual defendants did not breach their fiduciary duties by failing to produce books and records because the plaintiff did not make a proper request for such records; the individual defendants did not deny the plaintiff the ability to participate in the management of FASI because minority shareholders are not entitled to so participate absent a shareholder agreement and the shareholder agreement the plaintiff attached to her amended complaint was unexecuted; and the plaintiff's allegations regarding the "unauthorized" expenditures and terminated contracts were not sufficient to allege a breach of a fiduciary duty.

¶ 21      On July 17, 2019, FASI filed a motion for judgment on the pleadings, arguing that the plaintiff's allegation against it in count I is identical to the allegation the circuit court dismissed against the individual defendants in its June 13, 2019, order. FASI incorporated the June 13, 2019, order into its motion for judgment on the pleadings, arguing that the court's reasoning in that order applied equally to it.

¶ 22      Only July 18, 2019, the circuit court granted FASI's motion for judgment on the pleadings. The circuit court provided the plaintiff with an opportunity to once again amend her complaint, which she refused. At the plaintiff's request, the circuit court entered an order dismissing her claims against FASI and the individual defendants "with prejudice." This appeal followed.

¶ 23      On appeal, the plaintiff argues that the circuit court erred by dismissing her two claims against the individual defendants and granting judgment on the pleadings in favor of FASI on count I. We first address the circuit court's decision to dismiss count I as to the individual defendants and enter judgment on the pleadings on count I in favor of FASI.

¶ 24    A motion to dismiss a complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)) attacks the legal sufficiency of a complaint based upon defects apparent on the face of the complaint. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. The critical inquiry is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Id.* In making this determination, all well-pleaded facts in the complaint must be taken as true. *Id.* Our supreme court has emphasized that Illinois is a fact-pleading jurisdiction that requires the plaintiff to allege sufficient facts "to bring a claim within a legally recognized cause of action." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006). A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). Our review is *de novo*. *Bogenberger*, 2018 IL 120951, ¶ 23.

¶ 25    Section 2-615(e) of the Code provides that "[a]ny party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2018). In general, a pleading motion claims that, even if all of the facts alleged by the opponent were true, movant is entitled to judgment. *Christensen v. Wick Building Systems, Inc.*, 64 Ill. App. 3d 908, 912 (1978). A motion for judgment on the pleadings requires the circuit court to examine the pleadings to determine whether an issue of fact exists, or conversely, whether the controversy can be resolved as a matter of law. *Crestview Builders, Inc. v. Noggle Family Ltd. Partnership*, 352 Ill. App. 3d 1182, 1184-85 (2004). We review *de novo* a decision to grant a motion on the pleadings. See *Egan v. Steel*, 137 Ill. App. 3d 539, 543 (1985).

¶ 26    The plaintiff argues that her amended complaint properly alleged a claim that the defendants violated her rights under section 7.75 of the Act (805 ILCS 5/7.75 (West 2018)), which states as follows:

"(b) Any person who is a shareholder of record shall have the right to examine, in person or by agent, at any reasonable time or times, the corporation's books and records of account, minutes, voting trust agreements filed with the corporation and record of shareholders, and to make extracts therefrom, but only for a proper purpose. In order to exercise this right, a shareholder must make written demand upon the corporation, stating with particularity the records sought to be examined and the purpose therefor.

(c) If the corporation refuses examination, the shareholder may file suit in the circuit court *** to compel by mandamus or otherwise such examination as may be proper. If a shareholder seeks to examine books or records of account the burden of proof is upon the shareholder to establish a proper purpose. If the purpose is to examine minutes or the record of shareholders or a voting trust agreement, the burden of proof is upon the corporation to establish that the shareholder does not have a proper purpose.

(d) Any officer, or agent, or a corporation which shall refuse to allow any shareholder or his or her agent so to examine and make extracts from its books and records of accounts, minutes and records of shareholders, for any proper purpose, shall be liable to such shareholder, in a penalty of up to ten per cent [*sic*] of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him or her by law. It shall be a defense to any action for penalties under this Section that the person suing therefor has within two years sold or offered for sale any list of shareholders of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly

used any information secured through any prior examination of the books and records of account, or minutes, or records of shareholders of such corporation or any other corporation.

(e) Upon the written request of any shareholder of a corporation, the corporation shall mail to such shareholder within 14 days after receipt of such request a balance sheet as of the close of its latest fiscal year and a profit and loss statement for such fiscal year; provided that if such request is received by the corporation before such financial statements are available, the corporation shall mail such financial statements within 14 days after they become available, but in any event within 120 days after the close of its latest fiscal year." *Id.* § 7.75(b)-(e).

¶ 27 Thus, in order to state a claim, the plaintiff was required to allege that she (1) was a shareholder of FASI, (2) who made a written demand upon FASI, (3) stating with particularity the records she wished to examine, and (4) the purpose therefor.

¶ 28 The plaintiff contends that she made numerous demands for the books and records of FASI, provided a detailed list of the records requested, stated that the records were for the purposes of evaluating the price of her shares, and was refused the records.

¶ 29 The defendants respond that the plaintiff failed to allege she made a "written demand upon [FASI]" to "examine" its books and records at a reasonable time that was subsequently denied. They raise three primary arguments. First, they contend that the plaintiff failed to allege that she made a request to "examine" FASI's books and records. Rather, they contend the exhibits demonstrate only that she made a demand for the records to be "produced," which is not her statutory right under section 7.75(b) of the Act. Second, they argue that the vast majority of the plaintiff's demands were not made to FASI, as is required by statute, but to the individual defendants' lawyer. Third, the defendants contend that, even if the plaintiff did make a statutorily compliant request, she was never denied the right to examine the records. We ultimately agree with the defendants.

¶ 30 We begin by addressing the defendants' argument that the plaintiff failed to state a claim because she demanded production of the records, not to examine them. The plain language of section 7.75(b) of the Act provides shareholders with the right to "examine, in person or by agent," a corporation's books and records. *Id.* § 7.75(b). The defendants are correct that, in each of the letters attached to the plaintiff's complaint, she only ever demands that FASI's records and books be "produced." However, we do not believe that section 7.75(b) requires shareholders to say the magic word "examine" in order to be entitled to a corporation's books and record. Moreover, in order for a shareholder to examine a corporation's books and records, they must first be produced in some fashion. For instance, in *Hagen v. Distributed Solutions, Inc.*, 328 Ill. App. 3d 132, 139, 146 (2002), this court found that a shareholder's written request that " 'documents be provided' " to him pursuant to section 7.75 of the Act so that he may examine them was sufficient under the Act. Likewise, the plaintiff's demand that specific books and records be "produced" is sufficient given the detailed nature of the request.

¶ 31 Nonetheless, even assuming that the plaintiff's request for production of records is compliant with section 7.75(b) of the Act, that section also states that, in order to exercise the right to examine a corporation's books and records, "a shareholder must make written demand upon the corporation." 805 ILCS 5/7.75(b) (West 2018). Here, although the plaintiff made several written demands for books and records that she maintains were ignored, most of those letters were sent to the individual defendants' attorney, not to FASI. It was not until August

- 7 -

28, 2018, that the plaintiff made a demand of FASI via a letter to Coyle, in his capacity as FASI's president and registered agent. Therefore, the plaintiff made, at most, "one written demand upon the corporation" for the books and records she is entitled to pursuant to section 7.75(b) of the Act.

¶ 32 That said, the plaintiff was also required to allege that her request was refused, and she has not done so here. As the plaintiff's complaint acknowledges, on October 1, 2018, FASI's CPA sent her, Coyle, and Lichtenauer a copy of FASI's balance sheet as of August 31, 2018, and a profit and loss statement from January through August 2018. On October 3, 2018, FASI's CPA sent another e-mail with additional financial documents attached. On October 10, 2018, Coyle sent an e-mail to the plaintiff with still more financial information attached. The plaintiff filed the complaint giving rise to this appeal on the next day. Put simply, the plaintiff has not alleged that FASI, nor any agent or officer of FASI, refused her request for an examination of corporate books and records. Rather, the facts alleged show that the plaintiff's sole request for FASI's books and records directed to FASI was answered on the day she set as a deadline (October 1, 2018) and more documents were produced in the subsequent week. Evidently unhappy with the content of the production, she filed this lawsuit. Even taking the facts in the light most favorable to the plaintiff, we cannot conclude that she alleged sufficient facts to state claim for a violation of section 7.75(b) of the Act.

¶ 33 In so holding, we acknowledge that in *Hagen* this court found that a shareholder was entitled to judgment even though he did not allege that the corporation explicitly refused his request. However, we find *Hagen* distinguishable on the grounds that here, unlike in *Hagen*, the plaintiff did not make multiple requests for records that were ignored for six months before she filed suit. Instead, as previously mentioned, the plaintiff made a sole request for books and records directed to FASI, and FASI produced some records on the deadline given. The plaintiff, unhappy with the production, filed this suit. We conclude that, based on these facts, the plaintiff has failed to allege that FASI, or any agent of officer thereof, refused her request to examine FASI's books and records.

¶ 34 To be clear, the plaintiff is entitled, as a shareholder, to examine the records she has requested of FASI pursuant to section 7.75(b) of the Act. See *id.* However, the Act requires that, in order for the circuit court to issue a writ of mandamus or award damages, she must first allege that she was refused access. See *id.* § 7.75(c), (d). She has not done so here. Accordingly, the circuit court did not err by dismissing count I as to the individual defendants or granting judgment on the pleadings in favor of FASI.

¶ 35 The plaintiff next argues that the circuit court erred by granting the individual defendants' motion to dismiss count II: a derivative claim brought on behalf of FASI that alleged the individual defendants breached their fiduciary duties. Once again, our review of a circuit court's decision to grant a motion to dismiss pursuant to section 2-615 of the Code is *de novo*. *Bogenberger*, 2018 IL 120951, ¶ 23.

¶ 36 A shareholder derivative suit permits an individual shareholder to bring suit " 'to enforce a *corporate* cause of action against officers, directors, and third parties.' " (Emphasis in original.) *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). It was intended as a vehicle to allow shareholders to protect a corporation's interests from " 'faithless directors and managers.' " *Id.* (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 548 (1949)). However, to preserve the balance of control, the shareholder must first demonstrate as a precondition to bringing suit

that she made a demand on the corporation to pursue the action and that the demand had been refused or that the demand was " 'excused by extraordinary conditions.' " *Id.* at 96 (quoting *Ross*, 396 U.S. at 534). "The demand requirement is not merely a matter of procedure." *In re Huron Consulting Group, Inc.*, 2012 IL App (1st) 103519, ¶ 17.

¶ 37    The plaintiff argues that the circuit court erred by first finding that she failed to allege sufficient facts to show that demand on FASI to bring the suit was excused by extraordinary conditions. According to the plaintiff, she properly alleged that demand on the FASI board of directors to bring suit would be a futile and useless act because the individual defendants would not bring suit against themselves. The individual defendants respond that the plaintiff failed to allege who FASI's board of directors were and, therefore, failed to allege why demand would be useless.

¶ 38    In the plaintiff's amended complaint, she stated that "[d]emand on the Board of Directors of [FASI] to bring this suit against the individual defendants herein would be a futile and useless act, in that defendants committed the wrongs complained of herein, have profited from the wrongs, and defendants would not bring suit against themselves." We first note that the individual defendants are correct in that the plaintiff never alleged who was on FASI's board of directors and why they would not bring suit against the individual defendants. Instead, the plaintiff seems to be arguing that, because the individual defendants hold a majority of the shares in FASI and are the defendants in this suit, it naturally follows that they would not have allowed FASI to bring this suit and, as such, a demand would have been futile.

¶ 39    The plaintiff is correct that "[d]emand is excused where the majority of the directors are themselves involved in the matters complained of, so that it is evident that the demand would be unavailing." (Internal quotation marks omitted.) *Valiquet v. First Federal Savings & Loan Ass'n of Chicago*, 87 Ill. App. 3d 195, 200 (1979). However, the plaintiff is still required to "plead facts, not conclusions." *Id.* Additionally, "courts assess futility *ex ante* rather than *ex post*." *Kamen v. Kemper Financial Services, Inc.*, 939 F.2d 458, 462 (7th Cir. 1991).

¶ 40    Here, the plaintiff did not allege who sat on FASI's board of directors. The plaintiff's complaint alleged only that Coyle is President and Secretary of FASI, as well as a shareholder, and that Lyngen and Lichtenauer are also shareholders. There is no allegation that Lyngen or Lichtenauer are involved in the operation of FASI in any way. The plaintiff appears to be conflating the board of the directors and the shareholders, and while it is possible that the individual defendants also sit on the board of directors and, therefore, would be resistant to bringing suit against themselves, the plaintiff has not specifically alleged that is the case here. We reiterate that "[t]he demand requirement is not merely a matter of procedure." *In re Huron Consulting Group, Inc.*, 2012 IL App (1st) 103519, ¶ 17. The plaintiff was required to plead facts, not conclusions, which she has failed to do. We, therefore, conclude that the plaintiff has failed to allege with particularity facts showing that the demand requirement was excused.

¶ 41    That said, even if we were to find that the plaintiff sufficiently alleged that demand would have been futile, we still conclude that she failed to state a claim that the individual defendants breached their fiduciary duty.

¶ 42    To state a claim for breach of fiduciary duty, the plaintiff must allege the following: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69.

¶ 43    Here, the plaintiff argues that FASI is a closely held corporation and, as a result, the individual defendants owed fiduciary duties to FASI. Additionally, she argues that Coyle, as an officer of FASI, owed FASI a fiduciary duty of loyalty. We agree with the plaintiff that Coyle, as president and secretary of FASI, owed a duty of loyalty to FASI. See *Cooper Linse Hallman Capital Management, Inc. v. Hallman*, 368 Ill. App. 3d 353, 357 (2006) (explaining that a corporate officer owes a duty of loyalty to their corporate employer). However, it is less clear that FASI is a closely held corporation. If, in fact, FASI is not a closely held corporation, then the plaintiff has not alleged that Lichtenauer and Lyngen, as minority shareholders, owed FASI a fiduciary duty. See *Dowell v. Bitner*, 273 Ill. App. 3d 681, 690 (1995) ("[I]n general, a mere owner of stock does not owe a fiduciary duty to the corporation.").

¶ 44    To begin, the plaintiff does not allege that FASI has elected to be a closely held corporation under section 2A.05 of the Act (805 ILCS 5/2A.05 *et seq.* (West 2018)). Rather, she argues that FASI is a closely held corporation under common law because its stock is not sold openly on the market. In *Hagshenas v. Gaylord*, 199 Ill. App. 3d 60, 69 (1990), the Second District applied common-law principles applicable to closely held corporations despite the fact that the company at issue was not subject to a previous version of the Act. The *Hagshenas* court relied on the definition of a close corporation as " 'one in which the stock is held in a few hands, or in a few families, and wherein it is not at all, or only rarely, dealt in by buying or selling,' " and also the fact that the shareholders elected themselves directors and officers and participated in the day-to-day operations. *Id.* (quoting *Galler v. Galler*, 32 Ill. 2d 16, 27 (1964)); see also *Illinois Rockford Corp. v. Kulp*, 41 Ill. 2d 215 (1968). Here, the plaintiff alleged that FASI's shares were in the hands of only four individuals and the "stock is not bought and sold on the open market." However, only one of the four shareholders, Coyle, is alleged to be involved with the day-to-day operations of FASI. Therefore, it is far from certain whether FASI is a closely held corporation, in which case Lynden and Lichtenauer would not owe FASI a fiduciary duty.

¶ 45    Regardless, even assuming, *arguendo*, that the individual defendants owed FASI a fiduciary duty, the plaintiff was also required to allege that the individual defendants breached those fiduciary duties. She failed to do so here. The plaintiff's amended complaint alleged that the individual defendants breached their fiduciary duties in the following ways: (1) "freezing out" the plaintiff by denying her "the ability to participate in the operation and management of" FASI, denying her access to FASI's books and records, and "blocking [the plaintiff's] access to [FASI's] on-line financial and banking records"; (2) "unauthorized and wasted expenditures made by [FASI] to Macy's Department Store"; (3) "several questionable alarm part expenditures"; (4) "unauthorized bonus payments"; (5) "unexplained credit card purchases and sales of [FASI] vehicles"; (6) terminating or transferring client contracts; and (7) "preparing balance sheet entries that evidence potentially improper distributions or inadequate bookkeeping." We take each in turn.

¶ 46    One of the plaintiff's primary allegations is that the individual defendants were "freezing" her out of FASI by denying her the ability to participate in the operation and management of FASI, blocking her access to FASI's on-line financial and banking records, and denying her access to FASI's books and records. We have already addressed the plaintiff's claims regarding the books and records above, and we conclude once again that, because the plaintiff failed to allege that the individual defendants ever denied her access to such records, she cannot state a claim that they breached their fiduciary duties. Turning to the plaintiff's other contentions, we

note that the plaintiff is a minority shareholder and, therefore, is not entitled to control the operations of FASI absent a shareholder agreement. See *Gidwitz v. Lanzit Corrugated Box Co.*, 20 Ill. 2d 208, 215 (1960). Recognizing this fact, the plaintiff attached a copy of an unsigned shareholder agreement to her amended complaint that she contends provided her with the right to participate in the management of FASI and forms the basis of her claim that the individual defendants breached their fiduciary duties by "freezing" her out. The individual defendants respond that no such agreement existed and note that the attached shareholder agreement is unsigned and has handwritten notations and Microsoft Word comments in the margins. We agree with the individual defendants.

¶ 47    The Act requires that a shareholder agreement be "in writing." 805 ILCS 5/7.71(a) (West 2018). As the shareholder agreement attached here is unsigned, features handwritten notations, and Microsoft Word comments, it does not satisfy the Act's requirement that an agreement between parties be "in writing." Thus, the plaintiff's sole right as a shareholder is "to participate, according to the amount of [her] stock, in selection of the management of the corporation." *Gidwitz*, 20 Ill. 2d at 215. The plaintiff has failed to allege specific facts showing that the individual defendants prevented her from participating, consistent with the amount of shares she owns, in selecting the management of FASI. Illinois is a fact-pleading jurisdiction, which requires the plaintiff to allege sufficient facts "to bring a claim within a legally recognized cause of action." See *Marshall*, 222 Ill. 2d at 429-30 (citing cases). The plaintiff has failed to do so here and, therefore, the circuit court did not err in concluding that she failed to state a claim for breach of fiduciary duty based on these allegations.

¶ 48    The plaintiff next alleged a breach of fiduciary duty based on "unauthorized and wasted expenditures made by [FASI] to Macy's Department Store." In support of this claim, the plaintiff attached bank records that she attests are for FASI's checking account with entries that state "Auto Pymt Macys" and "CITIAUTFDR." As the individual defendants point out, nothing about the bank statement indicate that they reflect purchases at Macy's Department Store. According to the individual defendants, the payments went to "Citi, the issuer of the credit card that can be used anywhere, including for business expenses." Regardless of whether that is accurate, the fact remains that the plaintiff has failed to allege specific, supporting facts upon which to base an accusation that the expenditures were "unauthorized and wasted." There is no allegation that what was purchased did not have a legitimate business purpose. In fact, there is no allegation as to what was purchased. The plaintiff's sole basis for alleging these purchases were "unauthorized or wasted" is her apparent belief about the store where the purchase occurred. Once more, we conclude that the circuit court did not err in dismissing this claim. See *id.*

¶ 49    The plaintiff's next allegation is that she discovered "several questionable alarm part expenditures." However, the plaintiff failed to allege any details regarding the expenditures, such as who made the expenditures, what the expenditures were, when the expenditures were made, what she found "questionable" about the expenditures, and how did the expenditure amount to a breach of fiduciary duty. Put simply, this is not fact-pleading, and the circuit court did not err in dismissing this allegation.

¶ 50    We find that several of the plaintiff's remaining allegations suffer from the same flaw: no specific factual support. Specifically, the plaintiff's allegations regarding "unauthorized bonus payments," "unexplained credit card purchases and sales of [FASI] vehicles," and terminating or transferring "client contracts" all fail to allege specific facts to support a claim that this

conduct amounted to a breach of fiduciary duty. In other words, there is simply no facts alleged to determine who engaged in the conduct, what the conduct actually consisted of, and why it was a breach of a fiduciary duty. As such, the circuit court did not err in dismissing this allegation for failing to state a claim against the individual defendants.

¶ 51 Lastly, the plaintiff alleged a breach of fiduciary duty based on "preparing balance sheet entries that evidence potentially improper distributions or inadequate bookkeeping." Put simply, the plaintiff cannot state a claim for breach of fiduciary duty by alleging "potentially improper" conduct. This pure speculation falls far short of Illinois's fact-pleading standard. See *id.*

¶ 52 In sum, we conclude that the circuit court did not err when it granted the individual defendants' motion to dismiss count II of the plaintiff's amended complaint. The plaintiff failed to allege that the she was excused from making a precondition demand on FASI, and she failed to allege sufficient facts to state a claim against the individual defendants for breaching their fiduciary duties.

¶ 53 For these reasons, we affirm the judgment of the circuit court.

¶ 54 Affirmed.