2021 IL App (1st) 201279-U

FIFTH DIVISION
December 23, 2021

No. 1-20-1279

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MARK DONAHUE, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14 CH 8174 |
| | ) | |
| ANTHONY DEMMA, MAUREEN DEMMA, DOUGLAS KOMEN, JAMES BRICKER, GREEN GREASE ENVIRONMENTAL, INC., an Illinois corporation, and GREEN GREASE ENVIRONMENTAL SERVICES, LLC, an Illinois limited liability company, | ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Anna Helen Demacopoulos, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court properly dismissed plaintiff's amended complaint alleging direct claims of statutory corporate oppression and waste, breach of contract, aiding and abetting, and breach of fiduciary duty, and derivative claims of breach of fiduciary duty and aiding and abetting. Plaintiff failed to present a sufficiently complete record to allow this court to review whether the circuit court abused its discretion when it denied plaintiff's motion to compel. Affirmed.

¶ 2     Plaintiff Mark Donahue sought money damages resulting from an alleged breach of contract and business relationship involving defendants, Anthony Demma, Maureen Demma, Douglas Komen, James Bricker, Green Grease Environmental, Inc. (GGE, Inc.), and Green Grease Environmental Services, LLC (GGE, LLC) (collectively, defendants). The circuit court granted defendants' motions to dismiss under sections 2-615 and 2-619(a)(9) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(9) (West 2016)). He appeals this ruling and the court's order denying his motion to compel the production of documents from defendants. We affirm.

¶ 3                                    BACKGROUND

¶ 4     On May 13, 2014, Donahue filed a verified complaint for injunctive and other relief against defendants alleging, among other things, statutory oppression of a shareholder under section 12.56(a)(3) of the Illinois Business Corporation Act of 1983 (Act) (805 ILCS 5/12.56(a)(3) (West 2016)), corporate waste under section 12.56(a)(4) of the Act, breach of contract, breach of fiduciary duty, and aiding and abetting.

¶ 5     The complaint was eventually amended, and the amended complaint is the operative version for purposes of this appeal. The amended complaint alleged a complex mosaic of facts, set forth in paragraphs 5 through 20 of this order, which we take as true for the purposes of this appeal. See, *e.g.*, *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 18. According to the amended complaint, in late 2011, Anthony Demma approached Donahue about forming a business to obtain used cooking oil from restaurants and institutions, recycle it, and sell it as a source of clean energy. The two men had been high school classmates. Anthony obtained the idea from Bricker, another high school acquaintance, who owned a similar business in Pennsylvania. Anthony "suggested that he would finance the business if Donahue would take on all other responsibilities to get the company

started." Anthony told him that if he "invested his time and effort in starting up the business at a 'survival level' salary, Donahue would receive an equity interest in the business as part of his compensation."

¶ 6    Donahue "expressed interest in the project," and he worked with Anthony and Bricker to organize the business to initially serve the Chicago metropolitan area. Anthony "also promised Bricker an equity stake in the new company in exchange for Bricker's assistance in getting GGE off the ground. Bricker provided a business model, consulting and [a] software package called 'Greasr.' "

¶ 7    In early 2012, Anthony "advised Donahue and Bricker that [Anthony] would retain 51% control of the company, but that 49% would be available for equity ownership by Bricker, Donahue and others." Anthony asked Donahue to select a name for the new business and Donahue selected "Green Grease Environmental."

¶ 8    On January 6, 2012, GGE was incorporated as an Illinois corporation. Donahue alleged, on information and belief, that GGE, Inc. contemporaneously filed an election to be treated as an "S" corporation with the Internal Revenue Service. In March 2012, Anthony told Donahue that they would meet with GGE, Inc.'s attorney to discuss a lease, contracts, regulatory requirements, and the equity structure of the company. Anthony warned him that "formalizing the equity structure of the company 'could be cost prohibitive.' "

¶ 9    Donahue alleged that "[i]n lieu of a formal agreement documenting equity ownership for GGE, [Anthony], who is not a lawyer, sent Donahue and Bricker an email on April 10, 2012," proposing the equity structure of the company. A copy of the email delineating GGE, Inc.'s equity structure is attached to the complaint. It states, in pertinent part:

"Green Grease Environmental is organized to have two share classes.

*Class A: Ownership, voting, tax and liquidation class. 100% owned by Maureen Demma*

*Class B: Dividend share class (Inclusive of mergers, buy-outs and IPO)*

B Class: Initial Equity Ownership (4/1/2012)

| | |
|---|---|
| Maureen M Demma | 51% |
| Anthony M Demma | 44% |
| Mark Donahue | 1% |
| James Donahue | 1% |
| John P Mack | 1% |
| Mike Demma | 1% |
| James Bricker | 1% |

-Equity is to be awarded to the above owners (from Anthony Demma[']s initial allotment on the 1st day of January of each year based on previous year[']s internal goals.

-In the event that more equity is to be issued (current owners diluted), Maureen Demma will retain voting control of the company. This may come in the form of a "B class" or other means yet to be decided.

***

-Transferability: Should any recipient of class B shares wish to transfer them to another party. The company will have right of first refusal to purchase them back. The price will be determined as a pro rata of book value. If the transferring party wishes to object to the valuation, they will bear 50% of the cost of an outside valuation of shares. Selection of outside valuation will be mutually agreed upon.

-Each employee (excluding all Demmas) will have the following potential equity accumulation.

Mark Donahue (total possible 24%)

1/1/2013: Possible allocation of 4%

1/1/2014: Possible allocation of 5%

1/1/2015: Possible allocation of 5%

1/1/2016: Possible allocation of 5%

1/1/2017: Possible allocation of 4%."

¶ 10    Donahue accepted Anthony's proposal of equity ownership as partial compensation for services by proceeding to start up GGE, Inc.'s business. Beginning in January 2012 and continuing through February 2014, Donahue was GGE, Inc.'s sole full-time employee. Donahue worked 60 to 70 hours per week, on average, during this period. Anthony did not render any significant services to GGE, Inc., beyond maintaining the company's checkbook. Anthony was physically present at GGE, Inc. only twice during a period of two years.

¶ 11    Anthony financed GGE, Inc. through capital contributions of approximately $330,000. Donahue maintained every aspect of the company's operations, including finding a location for the plant, obtaining equipment, researching regulatory requirements, researching competition, preparing the company's website and all marketing material, setting up the company's sales database and generating a list of leads, as well as organizing the company's offices, accounts, and equipment. In addition, Donahue negotiated the company's contracts.

¶ 12    As a result of Donahue's efforts, GGE, Inc. was a fully functional used oil recycler by the end of 2012. Donahue continued to perform all responsibilities relating to permits and licensing, bookkeeping, regulatory compliance, insurance, maintenance, cleaning, ordering, transport of

material, sales, and all technology issues, among other tasks. Accordingly, GGE, Inc. became a profitable business by the end of 2013 and was poised to triple its income in 2014. Anthony projected the company would have 1,200 accounts by the end of 2015, which would yield a gross income of $1.2 million.

¶ 13　As of January 1, 2013, Donahue earned 4% equity pursuant to the April 10, 2012 email authored by Anthony. He also claimed that he earned an additional 5% equity as of January 1, 2014 under Anthony's equity proposal structure. Donahue alleged that "[a]s of January 1, 2014, [he] held a 10% equity interest in GGE."

¶ 14　Also in 2013, Anthony advised Donahue that his trading income had declined and that he was unable to make any further capital contributions to the business. Anthony knew Komen from the trading business and Komen had expressed interest in investing in GGE, Inc. Anthony and Donahue were interested in additional investment to hire more employees and expand GGE, Inc.'s business. Komen and Anthony agreed that Komen would provide an additional cash investment to GGE, Inc.　Komen and Anthony agreed to form a new limited liability company to take over and expand GGE, Inc.'s business.

¶ 15　On January 13, 2014, Komen sent Donahue a compensation proposal on behalf of the successor company, which is attached to the complaint as an exhibit.[1] The email stated, "we need you on the ground working the sales to build it so we have something for you to manage and direct." In describing the position of "Executive Director of Sales," the email stated that the duties included: (1) "Continues doing sales"; (2) "Manages Sales People – sets goals/monitors the process"; (3) "Sales Strategy – where we are selling/what territories/what zones (building

---

[1]　The attached email to Donahue is from "Green Grease Chicago," and does not include a signature. It is unclear from the record who authored this email.

density)"; and (4) "ETC." The email proposed initial equity at 10% with a three-year forfeiture clause of 1/3 per year, identifying forfeiture events as quitting and termination for cause, "[b]ut **not** for just missing goals alone." (Emphasis in original.) The email listed vesting dates of June 30, 2014, June 30, 2015, and June 30, 2016. The proposal included compensation of $52,000 plus commission and discretionary bonus. Finally, the email stated as to the 10% equity, "[p]ractically speaking – you won't see any cash for the PM – there won't be any distributions for a couple of years because it's all being plowed back into the business for growth." The email stated that, in the short term, "more PM isn't putting any more money in your pocket, long term the 10% PM will get you what you want." The email also stated:

"-Options/More equity **To Be Discussed** (wants clarity what this looks like) (does not want undefined risk) (wants current equity, higher salary, equity going forward) when we achieve that mass and you are into an executive position.

- what's down the road = ideally more satellites/more locations/more opportunities to invest and be owners in those as well (we didn't get into this [to] do just 1 in the first place)

- the goal is that 10% PM should provide you with a steady retirement 6 figure income stream." (Emphasis in original.)

¶ 16    The next day, Komen sent another email to Donahue entitled, "Employee Equity Incentive Agreement To be executed after new LLC is formed[,] funded and closed." The email, also attached to the complaint as an exhibit, stated:

"10% PM Vested Immediately—

24 months forfeiture over [three] 8 month increments. Forfeiture occurs by either Donahue [l]eaving the company or being terminated.

7

IE               Aug 31[,] 2014  3.33% of PM not-forfeitable

April 31[,] 2015  6.67% of PM not-forfeitable

December 31[,] 2015  10% of PM not-forfeitable

Donahue will sign the general employment agreement that everyone else will sign.

Further:

If <u>on or before</u> Jan 1[,] 2016 Donahue is promoted into an Executive Position, 10%

more PM will be granted and vested immediately with a 4 year forfeiture clause

under the same outline and provisions as the prior one.

Ie [*sic*] 4 years 1/4 per annum." (Emphasis in original.)

¶ 17    Donahue told Anthony and Komen that he would accept the base salary, commissions, and equity allocation, but not the forfeiture provisions. Anthony and Komen agreed and indicated that they would have the company's attorney draft a written agreement for Donahue to sign after he returned from vacation on January 23.

¶ 18    Also on January 14, 2014, GGE, LLC was formed and registered with the Illinois Secretary of State. Donahue was not informed of the particulars of the transaction, but believed that GGE, LLC, in substance, succeeded to GGE, Inc.'s business rights, obligations, assets, and liabilities.

¶ 19    Donahue was ordered to take a vacation between January 15 and January 22, 2014 before returning to oversee sales in the expanding business. Upon his return to the company's office, he met with Anthony and Komen to sign a written agreement. On January 24, 2014, Anthony and Komen informed him that there would be no written agreement between him and GGE, LLC. Komen advised him that defendants did not want to enter into a written contract because it would " 'open us up' " to a lawsuit from Donahue. Komen further told Donahue that he would have no equity interest in the new company and that his equity in GGE, Inc. had " 'no value,' " but if

Donahue performed well, Komen and Anthony " 'might' " award him some unspecified equity in the new company at some point in the future. Further, Komen told Donahue that his survival level salary would be reduced by 30%. Donahue protested that the terms were not what they had agreed to prior to his vacation. Komen crossed his arms and told Donohue to " '[t]ake it or leave it.' "

¶ 20    In light of the breach of terms to the oral agreement made prior to his vacation, the material reduction of his salary, and the renunciation of his equity ownership, Donahue was effectively terminated from GGE, Inc. and precluded from earning additional equity as compensation for his start up efforts. On February 25, 2014, Donahue's attorneys sought to inspect the books and records of GGE, Inc. Shortly thereafter, GGE, Inc.'s attorney responded to the request for information by denying Donahue was ever a shareholder of GGE, Inc.

¶ 21    Donahue had filed an initial verified complaint pleading similar facts. Defendants moved to dismiss the complaint pursuant to sections 2-606, 2-615, and 2-619 of the Code. 735 ILCS 5/2-606, 2-615, 2-619 (West 2014).

¶ 22    On November 5, 2014, the circuit court denied defendants' motion to dismiss. Donahue then filed a motion to compel on October 15, 2015.

¶ 23    On November 25, 2015, GGE, Inc. filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois.[2] The bankruptcy petition listed Donahue as

---

[2]    In their response brief, defendants claim that the bankruptcy petition included a sworn statement of financial affairs of GGE, Inc., which stated that, from November 26, 2013 to November 25, 2015, there had been no transfer of the company's assets to GGE, LLC. Notably, in this statement, "Part 13," entitled, "Details About the Debtor's Business or Connections to Any Business," asks to "[l]ist any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case." Defendants responded, "[n]one." Defendants also responded "no" to whether, "[w]ithin 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor or shareholders in control of the debtor who no longer hold these positions?" GGE, LLC is not mentioned in the sworn statement.

a GGE, Inc. equity security holder, but described his equity as "not vested" and stated that he had 0% of securities to Maureen's 100% interest. Donahue is also listed as one of the creditors in the petition. Maureen signed the Statement of Financial Affairs for Non-Individuals Filing for bankruptcy under penalty of perjury on behalf of GGE, Inc.

¶ 24     On January 5, 2016, the circuit court entered an order staying the case pending bankruptcy proceedings. On February 16, 2016, GGE, Inc. filed a notice of removal of the case to the federal bankruptcy court pursuant to 28 U.S.C. § 1452 and Fed. R. Bankr. P. 9027(c).

¶ 25     On June 13, 2016, Donahue filed a sworn creditor claim in the bankruptcy proceedings. The claim form requests "Information About the Claim as of the Date the Case was Filed." The form contains a section asking, "[h]ow much is the claim?" Donahue responded "$0.00." As to the basis of the claim, he stated "[e]quity owed from starting and running Green Grease for over two years."

¶ 26     On September 28, 2016, the bankruptcy court entered an order approving GGE, Inc.'s disclosure statement and confirming the company's plan of reorganization. The plan provided for no class of priority claims, five classes of secured claims, two classes of unsecured claims, and one class of equity holders. As to the class of equity holders, listed as "Class 8 – The equity interests of members of the L.L.C.," the court approved that "[t]he equity interests of any and all members of [GGE, Inc.] shall not be retained," and that Anthony "shall receive the entire equity interest in [GGE, Inc.] through a credit of no less than $50,000 against his Class 1 claim." Although Anthony acquired the entire equity interest in the reorganized GGE, Inc. in exchange for a credit bid of $50,000 against his secured claim, under section 8.03 of the confirmation plan, it was subject to higher or better offers. Indeed, GGE, Inc. was required to conduct an auction for the sale of equity in the reorganized company at the confirmation hearing, wherein "the offeror shall

constitute the new Interest Holder(s) in the Reorganized Debtor [GGE, Inc.]." Section 8.05 of the confirmation plan stated that GGE, Inc. "has no pending objections to claims." Section 9.16 stated that "[t]he Plan sets forth the entire agreement and undertakings relating to the subject matter thereof and supersedes all prior discussions and documents." Finally, section 9.17 of the plan stated that "[t]o the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Plan controls over the Disclosure Statement and any such agreement, and the Confirmation Order *** shall be construed together and consistent with the terms of the Plan."

¶ 27    In short, Donahue filed no objection to the confirmation plan and never contested Maureen's claim of 100% equity ownership. The bankruptcy court then confirmed the information in the disclosure statement by entering the order confirming GGE, Inc.'s reorganization plan. The record contains no evidence that Donahue attempted to make an offer for equity in the reorganized company in the context of the bankruptcy court proceedings.

¶ 28    On September 1, 2017, Donahue filed a motion in the bankruptcy court to amend his complaint and remove the case back to the circuit court of Cook County. He proposed to amend his complaint to (1) eliminate claims against GGE, Inc.; (2) add additional claims against the individual defendants not impacting GGE, Inc.; and (3) acknowledge that any recovery Donahue obtains nominally on behalf of GGE, Inc. against the individual defendants would be distributed through GGE, Inc.'s bankruptcy plan. At the hearing on the motion, the bankruptcy court did not raise the issue of whether Donahue had a Class 8 claim against GGE, Inc., only stating that "I can see why you might not want to dismiss [your state claims], for fear of putting yourself in a situation where you've lost your claims that might be derivative." The bankruptcy court entered an order on

September 12, 2015, granting Donahue leave to file an amended complaint and remanding the proceedings back to the circuit court of Cook County.

¶ 29    On November 14, 2017, Donahue filed his amended verified complaint, pleading essentially the same facts as the initial complaint. In addition, he alleged that Anthony and Komen breached obligations that otherwise targeted his equity interest in GGE, Inc. Donahue requested that any award in his favor and against defendants "should be ordered paid by defendants directly to [him] because defendants should not benefit from their own misconduct by sharing in the award derivatively, and because they would otherwise control their own payment [since] they seized control of the company."

¶ 30    Count I of the amended complaint alleges direct claims of statutory oppression and corporate waste against Anthony and Komen, asserting that Donahue was squeezed out of both GGE businesses.

¶ 31    Count II of the amended complaint alleges breach of contract claims against Anthony. This count is pled in the alternative, if the court does not find Donahue acquired an ownership interest in GGE, LLC. In support of this claim, Donahue alleged that, "[i]n late 2011 and early 2012, Donahue and [Anthony] discussed Donahue's acquisition of a minority interest in GGE, Inc. and GGE, LLC." Anthony offered escalating amounts of equity interest for each year, totaling 24%. Donahue "accepted the proposal and proceeded to devote all his time and energy into starting up and running GGE, Inc," and "satisfactorily performed all his obligations under the agreement."

¶ 32    In count III, Donahue asserts breach of fiduciary duty against Anthony, claiming that Anthony owed him and GGE, Inc. a "statutory and common law fiduciary duty of loyalty *** to refrain from acting in a reckless or intentionally harmful manner, refraining from engaging in grossly negligent or reckless conduct, or intentional misconduct in GGE, Inc.'s business."

Donahue alleged that he is entitled to bring a direct as well as derivative claim because defendants caused him individual harm, and otherwise knowingly targeted his interest in GGE, Inc., including the exclusion of his managerial, membership, and financial rights, reducing his share of a buyout, and otherwise eliminating his employment position. He further alleged that he had been personally harmed more significantly than any other member because he suffered expulsion from the company, loss of the value of his equity interest, and loss of use of profits and funds of the company. The count alleges that Anthony personally reaped the benefits of Donahue's interests in connection with the formation of GGE, LLC.

¶ 33    Count IV seeks recovery from Anthony for a breach of fiduciary duty to manage GGE, Inc. fairly and in good faith, per the reasonable expectations of the shareholders, without oppression, and without wasting assets under sections 12.56(a)(3), (a)(4), and 12.56(d) of the Act. It alleges that Anthony breached the Act by targeting Donahue's employment and equity interests, steering GGE, Inc.'s assets and opportunities elsewhere, and otherwise eliminating any possibility of Donahue's benefitting from his investment.

¶ 34    Count V alleges a direct claim of aiding and abetting against Komen, claiming that Komen had knowledge of: (1) Anthony's fiduciary obligations toward Donahue; (2) Anthony's agreement with Donahue to allot equity interest in GGE, Inc. to Donahue; and (3) Anthony's intentions to steer GGE, Inc. assets, profits, accounts, and opportunities elsewhere, including to GGE, LLC. The count further alleges that Komen personally benefitted by usurping his interests in GGE, Inc. without accounting or paying for the same, and that Komen's aiding and abetting was carried out in a willful and intentional manner, in reckless disregard to his rights.

¶ 35    Count VI alleges a derivative claim against Anthony for a breach of fiduciary duty. Donahue claims that, under section 7.80 of the Act, as a former shareholder, he may bring a

derivative claim and that he retains standing "when the defendants eliminated [a] shareholder's interest as a means to oppress that shareholder and to target that shareholder's standing to bring a derivative claim."

¶ 36    Count VII is a derivative claim against Komen for aiding and abetting. This count seeks punitive damages, derivative damages, and disgorgement of all compensation and benefits Anthony and Komen received while breaching their fiduciary duties.

¶ 37    On November 30, 2017, Anthony and Maureen Demma (collectively, the Demma defendants), filed a motion to dismiss pursuant to Code sections 2-606, 2-615, and 2-619. Generally speaking, the motion argued that the bankruptcy confirmation plan barred Donahue's claims in several ways. They noted that Donahue's attorney participated in the bankruptcy proceedings throughout and attended several of the hearings and the meeting of the creditors of GGE, Inc. Donahue filed a claim in the bankruptcy case, but did not vote on the confirmation plan, nor did he object to the approval of the disclosure statement or confirmation plan. Instead, he filed his amended complaint to collaterally attack the Demma defendants and Komen.

¶ 38    In the section 2-615 portion of their motion, the Demma defendants primarily argued that much of the amended complaint was premised upon an event that never occurred, namely, the transfer of GGE, Inc. assets to GGE, LLC. They asserted that GGE, LLC never operated and that all the assets of GGE, Inc., other than those foreclosed upon by Anthony as a secured lender to GGE, Inc. and subsequently leased back after the confirmation plan was entered, remain assets of GGE, Inc. The Demma defendants attached an exhibit to their motion, showing that GGE, LLC was involuntarily dissolved on July 10, 2015. The statement of financial affairs included as part of the bankruptcy petition filing indicated no transfer of assets from GGE, Inc. to GGE, LLC during the period in question. The Demma defendants argued that, although Donahue claimed an illegal

14

transfer of assets, he did not plead facts which reasonably support this inference and his assumption is contradicted by the bankruptcy court filings, subject to judicial notice. The Demma defendants also noted that the bankruptcy court's order confirming the plan extinguished any and all prior equity interests in GGE, Inc. and replaced them with a new equity interested vested in Anthony.

¶ 39 The Demma defendants also argued in the section 2-615 portion of their motion that the amended complaint was insufficiently pled because it failed to establish damages, asserting that Donahue's claim of equity was extinguished following confirmation of the bankruptcy plan. In addition, they contended Donahue failed to sufficiently plead consideration in his breach of contract claim. The amended complaint merely alleged that, after Anthony authored the work proposal and Donahue accepted it, he proceeded to "devote all his time and energy in starting up and running GGE, Inc." The Demma defendants contend that this action was consideration to GGE, Inc. and not to Anthony. Without consideration from Donahue to Anthony, the Demma defendants claimed that the parties did not enter into an enforceable contract, requiring dismissal of the amended complaint.

¶ 40 Finally, the Demma defendants argued in the section 2-615 portion of the motion that Donahue's derivative claims were extinguished by operation of law once the bankruptcy court confirmed the plan. Citing 11 U.S.C. § 541(a)(1), they contended that any derivative actions as of the commencement of the bankruptcy case became part of the GGE, Inc. bankruptcy estate, including " 'all equitable interests of the debtor [GGE, Inc.] in property.' " Although derivative actions were pursuable during the pendency of the bankruptcy proceedings, Donahue took no action before confirmation. Under 11 U.S.C. § 1141(b), the confirmation order vested " 'all of the property of the estate in the debtor,' " which takes the property " 'free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor,' " pursuant to

11 U.S.C. § 1141(c). In short, the Demma defendants argued that Donahue made no objection in the bankruptcy court and that court extinguished the derivative rights which he now seeks to assert.

¶ 41    In the section 2-606 portion of the motion, the Demma defendants argued that Donahue premised his equity interest claim based on an alleged written proposal authored by Anthony on April 10, 2012, which was not attached as a written instrument to the amended complaint.

¶ 42    In the section 2-619 portion of the motion, the Demma defendants argued that the amended complaint was barred by certain affirmative defenses. First, they argued that Donahue lacked standing to bring the derivative claims, again, because the bankruptcy court extinguished any interest he had when it confirmed the plan, which provided that Anthony would purchase the equity in the reorganized company through a new value contribution. Anthony's purchase was subject to higher and better offers through an auction, but no one made an offer. The Demma defendants argued that Donahue had ample opportunity to protect his alleged interest and acquire the entire company, but failed to submit a bid. Nor did he object to the confirmation plan. Instead, he filed a claim in the GGE, Inc. bankruptcy proceedings for $0.00. Further, the confirmation plan became unappealable 180 days after entry of the order, a deadline which had passed on March 27, 2017 under 11 U.S.C. § 1144. They also argued that, even if the bankruptcy court had not extinguished his equity interest, he was barred from maintaining his derivative claims because of his conflict of interest with other shareholders.

¶ 43    Finally, the Demma defendants argued in the section 2-619 portion of the motion that the amended complaint was barred by the statute of frauds. 735 ILCS 5/2-619(a)(7) (West 2016). Noting that Donahue did not attach a written agreement to the amended complaint, the motion argued that any such agreement was required to be in writing because it could not be performed within one year. The alleged "offer" was made by early 2012 and proposed a stock grant on January

1, 2013, with " 'additional interests to be earned as of January 1 of each calendar year thereafter, up to a total of 24%.' " Thus, the agreement was subject to the statute of frauds and unenforceable.

¶ 44    On December 4, 2017, Komen also filed a combined motion to dismiss pursuant to Code section 2-619.1. Komen argued that counts I, V, and VII of the amended complaint should be dismissed because they were barred by the statute of frauds. Although labeled as a cause for dismissal under section 2-615 in his motion, this actually is a basis for dismissal under section 2-619(a)(7) of the Code. 735 ILCS 5/2-619(a)(7) (West 2016) (providing for involuntary dismissal based on the defense that "the claim asserted is unenforceable under the provisions of the Statute of Frauds"). Komen contended that Donahue did not attach any written agreement demonstrating his claim for equity ownership of GGE, Inc. The informal equity ownership accrual as alleged was impossible to perform fully within one year and, therefore, violated the statute of frauds. Komen also contended that Donahue's alleged derivative claims were extinguished in bankruptcy. In addition, Komen argued that Donahue lacked recoverable damages since any equity he might have claimed has been extinguished.

¶ 45    Further, Komen argued that he could not have aided and abetted a breach of fiduciary duty allegedly committed by Anthony because he was unaware of Donahue's claim of equity in GGE, Inc. An aiding and abetting claim requires the defendant to be regularly aware of his role as part of the overall tortious activity and must knowingly and substantially assist the principal in the violation. Komen contended he was unaware of any fiduciary or other relationship between Donahue and GGE, Inc. Komen also argued that he neither had any ownership in nor an officer's position with GGE, Inc. and, therefore, had no ability to deny Donahue's ownership of any equity in GGE, Inc. Komen attached an affidavit to his motion, attesting to his involvement in the formation of GGE, LLC and his lack of knowledge of Donohue's claim of equity in GGE, Inc. We

omit further description of the affidavit, in light of our ultimate disposition of Donohue's claims against Komen.

¶ 46 On March 13, 2019, Donahue filed an amended motion to compel documents from defendants' joint privilege log. After briefing, the circuit court denied his motion to compel on December 20, 2019. After reviewing the documents *in camera*, the court found that Donahue was not a member of GGE, Inc.'s control group and that the disclosures to Komen and his attorney did not waive attorney-client privilege.

¶ 47 On August 31, 2020, the circuit court heard argument on the various defendants' motions to dismiss and ordered dismissal of the amended verified complaint with prejudice. The court dismissed counts I through IV under Code section 2-615 and counts V through VII under both Code sections 2-615 and 2-619(a)(9) "for the reasons stated in open court."

¶ 48 On September 29, 2020, Donahue moved to reconsider the dismissal order. The circuit court denied the motion on October 14, 2020, explaining its reasoning in open court but without issuing an explanatory opinion. He filed a notice of appeal on November 23, 2020, noting therein that he sought relief from the court orders entered on December 20, 2019, August 31, 2020, and October 30, 2020.[3]

¶ 49 On December 7, 2020, Donahue requested preparation of the record on appeal by the clerk of the circuit court of Cook County. The circuit court entered an agreed order on December 16, 2020 to unseal pleadings for purposes of finalizing the record on appeal.

¶ 50 On December 21, 2020, Donahue filed a motion in the circuit court to approve a bystander's report. The proposed bystander's report contained a description of the proceedings

---

[3] It appears Donahue meant to appeal the October 14, 2020 order denying his motion to reconsider and that the date is a scrivener's error.

drafted by Donahue's counsel. Defendants objected to the proposed bystander's report, arguing, among other things, that it was "confusing and vague as to what actually transpired before the Court on the dates at issue and, thus, would be a confusing, vague, and potentially misleading record of the Court's proceedings."

¶ 51    On February 2, 2021, the circuit court approved, over defendants' objection, its own bystander's report. The supplemental record does not include the actual court order allowing the bystander's report. It is only referenced in a February 3, 2021 email from the clerk of the circuit court, stating that the order was signed and file stamped, and that the circuit court judge "initialed the version of the bystander report she approves." The email also stated that the circuit court "considers this order as entered," but "may not appear in the common law record for a few days." The bystander's report, signed by the circuit court judge and dated February 2, 2021, is the only material in the record which explains the circuit court's reasoning. It states as follows:

> "On August 31, 2020, the Court heard argument on the defendants' motions
> to dismiss. *** During the hearing, the Court noted that the Bankruptcy Court had
> already held that Maureen Demma, not Anthony Demma, was the sole owner of
> [GGE, Inc.]. The Court asked Donahue's counsel if she had any evidence showing
> that Anthony Demma, a non-owner, had the authority to issue shares of [GGE,
> Inc.]. Counsel responded that she did not have any additional evidence at that time,
> outside of what was in the pleading and motion to dismiss response. The Court
> dismissed Count I of Donahue's first amended complaint with prejudice holding
> that Donahue could not plead an oppression claim per 805 ILCS 5/12.56(a)(3)
> against someone who had no authority to issue shares. The court found that Count
> I of the complaint must be dismissed with prejudice because the complaint failed

to identify anything other than an alleged oral agreement for the issuance of shares between Donahue and [Anthony] (who did not have authority to issue shares), and counsel for Donahue made representations that she was not aware of any other facts that would cure the defects the Court found in the complaint. The Court added that, if Donahue was suing on an employment contract with the entity, then the entity needed to be a party to the lawsuit, and [GGE, Inc.'s] Bankruptcy had precluded that claim. The Court also added that it considered Donahue's breach of contract count an employment issue that should have been brought as a wage claim in Bankruptcy Court against [GGE, Inc.]. The Court dismissed Count II of Donahue's first amended complaint with prejudice for the same reasons articulated for dismissing Count I. In addition, the Court ruled that the oral contract Donahue alleged violated the statute of frauds. The Court also dismissed Counts III and IV of Donahue's first amended complaint for the same reasons as Count I, adding that the defendants did not owe a fiduciary duty to Donahue. The Court dismissed Count V of Donahue's first amended complaint holding that the Demma Defendants did not owe a fiduciary duty to Donahue. The Court based this finding on the preclusive impact of [GGE, Inc.'s] bankruptcy submissions and the bankruptcy court's findings. The Court dismissed Count VI and VII of Donahue's first amended complaint holding that he lacked standing to bring [or] maintain derivative claims on behalf of the company."

¶ 52    On March 3, 2021, Donahue filed a motion for a supplemental record in the circuit court, requesting an order requiring inclusion of the bystander's report in the record on appeal. The circuit court granted the motion over defendant Komen's objection.

¶ 53    On March 29, 2021, Donahue moved for leave to file a supplemental record containing the court's bystander's report in this court. This court granted the motion on April 7, 2021, without objection from defendants.

¶ 54                                    ANALYSIS

¶ 55    On appeal, Donahue argues the circuit court erred by granting the motions to dismiss. In particular, he challenges the court's holding that the bankruptcy confirmation plan barred his direct and derivative claims. In addition, he contends that the court erred by denying his motion to compel the production of GGE, Inc.'s allegedly privileged documents.

¶ 56                          Proper Filing of the Record on Appeal

¶ 57    Before addressing the merits in this case, we first consider defendants' argument that this appeal should be dismissed in its entirety because of Donahue's failure to timely file the bystander's report.

¶ 58    The defendants' point is technically correct. Under Supreme Court Rule 323 (Ill. S. Ct. R. 323 (eff. July 1, 2017)), the bystander's report was due February 15, 2021, but it was not filed until April 7, 2021. However, we note that this court already allowed the filing of the supplemental record, without objection by defendants. Therefore, the point is forfeited. Even if we were to strike the bystander's report, the lack of a bystander's report does not impede our review. "An appellant's failure to provide a report of proceedings will not bar this court's review where, as here, the issue involves a question of law. *In re Marriage of Hildebrand*, 166 Ill. App. 3d 795, 800 (1988). Indeed, "failure to present a report of proceedings does not *per se* require dismissal of the present appeal;

it merely requires affirmance of those issues which depend for resolution of facts not in the record."

*Rosenblatt v. Michigan Avenue National Bank*, 70 Ill. App. 3d 1039, 1042 (1979).[4]

¶ 59                                                 Standard of Review

¶ 60    Section 2-619.1 of the Code permits a defendant to file a combined motion to dismiss pursuant to sections 2-615 and 2-619 of that Code. 735 ILCS 5/2-619.1 (West 2016). "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts," and we "construe the allegations in the complaint in the light most favorable to the plaintiff." *Id.* (citing *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004)). Illinois is a fact-pleading jurisdiction, and a plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action. *Id.* at 429-30. However, "a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* at 429. We review an order granting or denying a section 2-615 motion *de novo*. *Id.*

¶ 61    We also review denial of a section 2-619 motion to dismiss *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Section 2-619(a)(9) allows dismissal if "the claim asserted against

---

[4]     Nonetheless, we also note that Donahue failed to comply with Illinois Supreme Court Rule 341(h)(6) in that the statement of facts in his opening brief cites to the appendix instead of to the record on appeal, as required by the rule. See Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018). In addition, he provided inaccurate citations to the record for the factual propositions he stated. We caution that the rules of procedure for appellate briefs are rules, not mere suggestions, and it is within our discretion to strike a brief and dismiss an appeal for failure to comply with the rules. See *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10. However, when, as here, a brief is adequate in most respects and the deficiencies do not hinder our ability to review the issues at hand, we will not strike it. See *Spangenberg v. Verner*, 321 Ill. App. 3d 429, 432 (2001) (declining to strike a brief when it complied with the rules in other ways and none of the violations were so flagrant as to hinder or preclude review).

defendant is barred by other affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2016). When ruling on a motion to dismiss under section 2-619, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24. As a result, a court should not grant a motion to dismiss unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.*

¶ 62    In this case, although we have the benefit of reviewing the circuit court's reasoning for granting defendants' motions to dismiss in the bystander's report, we review the judgment, not the reasoning, of the circuit court and may affirm on any basis in the record. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995); *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 586 (2005). We now turn to the merits of this case.

¶ 63        Count I – Direct Claim of Statutory Oppression Against Anthony and Komen

¶ 64    Because it is dispositive, we will first address whether Donahue properly pled a cause of action for statutory oppression and corporate waste under sections 12.56(a)(3) and (a)(4) of the Act. The critical inquiry in count I is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. When making this determination, all well-pleaded facts in the complaint must be taken as true, however, our supreme court has emphasized that a plaintiff is required to allege sufficient facts "to bring a claim within a legally recognized cause of action." *Marshall*, 222 Ill. 2d at 429-30.

¶ 65    The pertinent sections of 12.56 of the Act provide:

"(a) In an action by a shareholder in a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or

23

more members of a national or affiliated securities association, the Circuit Court

may order one or more of the remedies listed in subsection (b) if it is established

that:

\*\*\*

(3) The directors or those in control of the corporation have acted, are

acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect

to the petitioning shareholder whether in his or her capacity as a shareholder,

director, or officer; or

(4) The corporation assets are being misapplied or wasted." 805 ILCS

5/12.56(a)(3), (4) (West 2016).

¶ 66 Thus, to state a claim for corporate oppression and waste under sections 12.56(a)(3) and

(a)(4), Donahue was required to allege that: (1) he was a shareholder of GGE, Inc.; (2) the directors

or those in control of the corporation acted in a manner that was illegal, oppressive, or fraudulent

with respect to him; and (3) the directors or those in control of the corporation misapplied or wasted

corporate assets. Count I alleges that Anthony and Komen squeezed him out of both GGE

businesses. It alleged that his employment was terminated, no meeting of shareholders was called,

and he had been "kept in the dark regarding the disposition of GGE, Inc.'s assets." It also asserted

that he was "denied the ability to inspect books and records of GGE, Inc.," had not received any

accounting, and had been told that his interest in GGE, Inc. had been rendered worthless. It alleged

that Anthony and Komen "acted in a manner which is illegal, oppressive, and fraudulent" under

section 12.56(a)(3) and that they also "misapplied or wasted GGE, Inc.'s assets, value, profits and

business opportunities" under section 12.56(a)(4).

¶ 67    Section 2.10 of the Act provides that corporations are required to file articles of incorporation delineating, among other things, a corporate name, the purpose for which the corporation is organized, the address of the business, and the number of shares of each class the corporation is authorized to issue. 805 ILCS 5/2.10 (West 2016). As to shares, this section provides that the articles of incorporation also must include:

> "(6) the number and class of shares which the corporation proposes to issue without further report to the Secretary of State, and the consideration to be received, less expenses, including commissions, paid or incurred in connection with the issuance of shares, by the corporation therefor. If shares of more than one class are to be issues, the consideration of shares of each class shall be separately stated; and
>
> (7) if the shares are divided into classes, the designation of each class and a statement of the designations, preferences, qualifications, limitations, restrictions, and special or relative rights with respect to the shares of each class." *Id*.

¶ 68    In addition, the articles of incorporation "may" set forth, among other things, "the names and addresses of the individuals who are to serve as the initial directors," as well as provisions "defining, limiting, and regulating the rights, powers and duties of the corporation, its officers, directors and shareholders." 805 ILCS 5/2.10 (West 2016).

¶ 69    Section 1.80 of the Act defines a "shareholder" as "one who is a holder of record of shares in a corporation." 805 ILCS 5/1.80 (West 2016). The amended complaint describes GGE, Inc. as an Illinois corporation, and that GGE, Inc. "contemporaneously filed an election to be treated as an 'S' corporation with the Internal Revenue Service." The amended complaint also describes Maureen as "reportedly a shareholder" in GGE, Inc., but holding the shares "in name only," on behalf of her husband, Anthony. The articles of incorporation apparently are not of record. Perhaps

they could have helped this court understand the corporate structure of GGE, Inc. and, most importantly for purposes of this case, who had authority to issue shares and whether shares were issued to anyone other than Maureen.

¶ 70    Instead, Donahue claims in count I that he was a GGE, Inc. shareholder only based on the April 10, 2012 email proposal authored by Anthony. The amended complaint does not plead that Anthony held a position in the corporation that authorized him to distribute shares. It does not plead that Maureen, as the 100% owner of the company as stated in the same email, authorized the distribution of the Class B dividend class of shares to Donahue or authorized Anthony to distribute the shares. Instead, the count states: "[i]n lieu of a formal agreement documenting equity ownership for GGE, Inc., [Anthony], who is not a lawyer, sent Donahue and Bricker an email" that "proposed" equity ownership in GGE, Inc. and that he "accepted [Anthony's] proposal of equity ownership as partial compensation of services by proceeding to start up GGE, Inc.'s business." There is no record evidence demonstrating Donahue's "acceptance" of the terms provided in the email.  And nowhere does the April 10, 2012 email state that Donahue was to be awarded equity as partial compensation for services. Instead, the email simply states that "[e]quity is to be awarded to the above owners *** on the 1st day of January of each year based on previous year[']s internal goals," with no explanation of what those goals were or who was required to achieve them.

¶ 71    Further, the email was not attached to the amended verified complaint as evidence of a claim founded upon a written instrument, as required by Code section 2-606. 735 ILCS 5/2-606 (West 2016) ("If a claim *** is founded upon a written instrument, a copy thereof, or of so much of the same is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his *** pleading an affidavit stating facts showing that the instrument is not

accessible to him or her"). Failure to comply with section 2-606 is a valid basis for dismissal. See *Sherman v. Ryan*, 392 Ill. App. 3d 712, 733 (2009); *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 100 (1992). Moreover, "[t]he Act requires that a shareholder agreement be 'in writing.' " *Elleby v. Forest Alarm Service, Inc.*, 2020 IL App. (1st) 191597, ¶ 47 (quoting 805 ILCS 5/7.71(a) (West 2018)).

¶ 72     Donahue therefore failed to allege sufficient facts to show that he was a shareholder in GGE, Inc. – he simply pled a legal conclusion that he received the initial 1% equity and earned additional equity each year as a result of his performance. His claim is entirely premised upon an email authored by a person who may or may not have had the authority to distribute shares, which email was not attached to his complaint. The record is also devoid of any stock certificate or any paper evidence demonstrating Donahue was a shareholder in GGE, Inc. A plaintiff is required to " 'plead facts, not conclusions.' " *Elleby*, 2020 IL App (1st) 191597, ¶ 39 (quoting *Valiquet v. First Federal Savings & Loan Ass'n of Chicago*, 87 Ill. App. 3d 195, 200 (1979)). The amended complaint also does not allege an obligation by Anthony to deliver specific equity to Donahue, any specific length of time for Donahue's employment, or any conditions which must be satisfied before he could earn more equity or his employment could be terminated. Nor does it allege any agreement that GGE, Inc.'s business or affairs would be managed in any particular fashion or provide for a buy-out of Donohue's alleged equity in the company. The count also does not allege that he was guaranteed that his equity interest in the company would ever have any value or how value could be added over time.

¶ 73     In short, Donahue summarily pled that he was a shareholder in GGE, Inc. without pleading sufficient facts supporting that conclusion. Our *de novo* review also has not revealed sufficient evidentiary support of Donahue's assertion that he was a shareholder in GGE, Inc. Therefore, as

he did not plead sufficient facts establishing himself as a shareholder, he cannot maintain a cause of action claiming a statutory violation of corporate oppression and waste under sections 12.56(a)(3) and (a)(4) of the Act. The circuit court properly dismissed count I of the amended complaint under section 2-615 of the Code.

¶ 74 Even if count I appropriately stated a cause of action under the Act, it was still properly dismissed pursuant to section 2-619 of the Code because it was barred by the bankruptcy judgment confirming the reorganization plan. The most plausible factual scenario here, based on the record, is that Maureen held control of the corporation as sole shareholder. The statement of financial affairs filed in the bankruptcy court listed Maureen as GGE Inc.'s sole owner and shareholder. While GGE Inc.'s bankruptcy case proceeded, Donahue was represented by counsel, filed a sworn creditor claim, and participated in the proceedings. However, Donahue never objected during the bankruptcy proceedings to Maureen's status as the sole shareholder or challenged the distribution of equity in the time period preceding GGE Inc.'s Chapter 11 bankruptcy filing. He also never objected to GGE Inc.'s disclosure statement and proposed plan of reorganization. When the bankruptcy court entered an order approving GGE's disclosure statement and confirming the reorganization plan on September 28, 2016, it effectively bound the terms of the reorganization plan under section 1141 of the bankruptcy code, which states:

> "Except as provided in subsections (d)(2) and (d)(3) of this section [which are inapplicable in this case], the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and *any creditor, equity security holder*, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." (Emphasis added.) 11 U.S.C. § 1141.

¶ 75    The confirmation plan also extinguished "[t]he equity interests of any and all members" of GGE, Inc. Donahue never bid on the equity thereafter even though the confirmation plan required a "new value auction," which allowed "for the purchase of equity" in the reorganized GGE, Inc.

¶ 76    Donahue argues that his direct claims against Anthony and Komen in counts I and II are similar to the claims alleged in *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85 (2001), in which the plaintiff debtors brought a lender-liability action against the defendant lender, arising from the lender's decision to set off $430,000 from the debtors' account and apply those funds to the outstanding balance owed by the debtors prior to the debtors' filing of a bankruptcy petition. The circuit court held that *res judicata* precluded the plaintiffs from asserting their claim to recover the set off and the appellate court affirmed, holding "[i]f [the plaintiffs] believed that [the defendant] had breached the agreement under which it claimed a right to payment, *it should have contested the claim during the bankruptcy proceeding*." (Emphasis added.) *Cabrera*, 324 Ill. App. 3d at 98. Therefore, *Cabrera* does not support the validity of the amended complaint.

¶ 77    Furthermore, Donahue repeatedly argues that section 524(e) of the bankruptcy code "does not operate to relieve non-debtors of their liabilities," quoting *Gillman v. Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000). However, the court in *Gillman* stated that the bankruptcy court "never specifically addressed the release and permanent injunction of Plaintiffs' claims," and therefore, the order confirming the debtors' plan of reorganization, releasing and permanently enjoining the plaintiffs' claims was not accompanied by any findings that the release was fair to the plaintiffs and necessary to the debtors' reorganization plan. *Id.* at 214. In any event, Donahue failed to properly plead his claim regardless of the application of 11 U.S.C. § 524(e). Whether the non-debtors are relieved of their liabilities is merely secondary if he cannot properly plead the claim from which he seeks relief.

¶ 78    In this case, Donahue is bound by the bankruptcy court's order confirming the reorganization plan under 11 U.S.C. § 1141, which confirmed Maureen as the sole shareholder of GGE, Inc. before the company filed its Chapter 11 bankruptcy and extinguished the equity interests of any and all members upon its emergence from bankruptcy. We affirm the dismissal of count I of Donahue's amended verified complaint on this basis as well.

¶ 79                    Count II – Breach of Contract Claim Against Anthony

¶ 80    Donahue next argues that the circuit court erred when it dismissed his breach of contract claim because it was untimely under the statute of frauds. In his opening brief, he stated that he "bases his claim for breach of contract on an oral agreement entered into late 2011," and "not the April 10, 2012 email." He continues, "[t]he April 2012 email merely evidences the prior promise to increase [his] equity shares." He contends that he provided consideration for the contract by working for GGE, Inc. on a survival salary.  He argues Anthony agreed to provide him equity in GGE, Inc. if he agreed to work at a survival salary.

¶ 81    The amended complaint states that Count II is "submitted in the alternative, in the event and to the extent Donahue is found not to have acquired an ownership interest in GGE, LLC." The next paragraph of the complaint states that "[i]n late 2011 and early 2012, Donahue and [Anthony] discussed Donahue's acquisition of a minority interest in GGE, Inc. and GGE, LLC." Notably, and contrary to the argument in Donahue's brief, the complaint also alleges that Komen's participation and the formation of GGE, LLC did not occur until sometime in 2013. Nevertheless, Donahue also pled in count II that Anthony offered him "an immediate one percent interest in the company with an additional 4% to be earned as of January 1, 2013." Donahue next pled that Anthony "further offered Donahue additional interests to be earned as of January 1 of each calendar year thereafter,

up to a total of 24%." The complaint then stated that Donahue "accepted the proposal and proceeded to devote all his time and energy in starting up and running GGE, Inc."

¶ 82    To state a cause of action for breach of contract, a plaintiff must allege facts establishing that the parties exchanged an offer, an acceptance, and consideration. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 29 (1991). In addition, the plaintiff must allege definite and certain terms of the contract, the plaintiff's performance of all required contractual conditions, the defendant's breach of the terms of the contract, and damages resulting from the breach. *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 175 (1997). Our supreme court has held that "in order for a valid contract to be formed, an 'offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain.' " *Cheever*, 144 Ill. 2d at 29 (quoting 1 Williston on Contracts §§ 38-48 (3d ed. 1957) and 1 Corbin on Contracts, §§ 95-100 (1963)). "The terms must be clear, certain, and free from ambiguity and doubt." *Morey v. Hoffman*, 12 Ill. 2d 125, 130 (1957). Further, "[a]lthough the parties may have had and manifested the intent to make a contract, if the content of their agreement is unduly certain and indefinite no contract is formed." *Cheever*, 144 Ill. 2d at 29 (citing 1 Williston § 37 and 1 Corbin § 95).

¶ 83    In this case, Donahue has alleged the formation of an oral contract, but the allegations he has set forth in the amended complaint lack the definite and essential terms required for the formation of an enforceable contract. A contract " 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.' " *Id.* (quoting *Morey*, 12 Ill. 2d at 131).

¶ 84    Here, Donahue has pled more conclusions than facts. Numerous terms and conditions of the alleged oral agreement remain undefined and, thus, unpled. For example, count II lacks any terms of consideration. Paragraphs 82 through 84 of the amended complaint stated the alleged offers of increased equity interest from Anthony, but provided no terms whatsoever regarding the consideration for those terms. Paragraph 85 simply concluded Donahue "accepted the proposal and proceeded to devote all his time and energy in starting up and running GGE, Inc.," while providing absolutely no detail about the conditions of employment and the goals necessary for an increase in equity interest as Donahue alleged. These omissions raise many questions: When did the alleged contract commence? What terms were involved to start up and run GGE, Inc., as Donahue alleges? What was the beginning date of employment and did his employment expire at a certain date, or was it indefinite? Did Donahue receive a salary and for what amount? What was the value of the alleged equity? How would the equity be structured? None of these details were pled in the amended complaint. Moreover, Count II fails to allege Donahue's performance of all required contractual conditions, Anthony's breach of the undefined terms of the contract, and damages resulting from the breach. *Barille*, 289 Ill. App. 3d at 175.

¶ 85    In this case, the essential terms are so uncertain and, more significantly, not pled in the amended complaint, that there is no basis for deciding whether the agreement has been kept or broken. "It is not the role of the court to rewrite the contract and spell out essential elements not included therein." *Cheever*, 144 Ill. 2d at 31. Because Count II provides no sufficient factual basis for contract formation under Illinois law, the breach of contract claim fails.

¶ 86    Even if Count II had properly set forth facts describing definite and certain terms of oral contract formation, breach, and damages, it was properly dismissed because of the operation of the

statute of frauds under section 80 of the Illinois Frauds Act (740 ILCS 80/1 (West 2016)). The statute provides:

> "No action shall be brought *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." *Id*.

¶ 87    In short, the statute of frauds requires a writing with an authorized signature for specified agreements that, by their terms, cannot be performed within one year of their making. *Id*.; see also *Barnes v. Michalski*, 399 Ill. App. 3d 254, 271 (2010). In *Barnes*, the court stated that the test for application of the statute of frauds is "whether the contract was capable of being performed within one year after its formation, not whether the parties contemplated that it would be performed within that time." 399 Ill. App. 3d at 271 (citing *Robinson v. BDO Seidman, LLP*, 367 Ill. App. 3d 366, 370 (2006)).

¶ 88    In this case, paragraph 83 of the amended complaint alleged that Anthony offered Donahue an immediate one percent interest in the company (although no date of commencement is pled), with an additional 4% to be earned as of January 1, 2013. Paragraph 84 stated that Anthony "further offered Donahue additional interests to be earned as of January 1 *of each calendar year thereafter*, up to a total of 24%." (Emphasis added.) Accordingly, as pled, the alleged terms of the oral agreement could not be performed within one year. Further, as the terms to achieve full performance of the oral agreement were not pled in the amended complaint, Donahue cannot claim defendants are estopped from relying on the statute of frauds as an affirmative defense to contract formation. See, *e.g.*, *American College of Surgeons v. Lumbermens Mutual Casualty Co.*, 142 Ill.

App. 3d 680, 698-99 (1986) ("The rationale of the full performance doctrine is that when one party, in reasonable reliance on the contract, performs all of its obligations, it would be unfair to allow the other party to accept the benefits under the contract but to avoid its reciprocal obligations by asserting the Statute of Frauds."); *Meyer v. Logue*, 100 Ill. App. 3d 1039, 1043-44 (1981) (same). As the alleged agreement between the parties was not in writing, it violated the statute of frauds. 740 ILCS 80/1 (2016). We affirm the circuit court's judgment to dismiss the amended complaint on this basis.

¶ 89                Counts III through VII – Remaining Direct and Derivative Claims

¶ 90    Before we can address the merits of Donahue's remaining claims in counts III through VII, we must first determine whether Donahue has standing to allege direct and derivative claims. He argues that an equity owner like himself may bring both direct and derivative claims if the gravamen of the claim involves injuries not unique to all the shareholders and if, as here, defendants allegedly targeted his equity interests. He cites *Levy v. Markal*, 268 Ill. App. 3d 355 (1994) and *Zokoych v. Spalding*, 36 Ill. App. 3d 654 (1976) in support of this claim. The plaintiffs in *Levy* and *Zokoych* were shareholders attempting to bring individual and derivative actions for breaches of fiduciary duties.

¶ 91    "In Illinois, a shareholder may bring a derivative action and an individual claim at the same time if he has suffered a different injury from his fellow shareholders." *Levy*, 268 Ill. App. 3d at 371. "Thus, 'where the wrongful acts are not only against the corporation but are also violations of a duty *** owed directly by the wrongdoer to the stockholders,' a stockholder may sue both derivatively and individually to obtain redress for these wrongs." *Id*. (quoting *Zokoych*, 36 Ill. App. 3d at 663).

¶ 92    Standing requires that a party have a real interest in the action brought and in its outcome. *In re Estate of Wellman*, 174 Ill. 2d 335, 344 (1996). The issue of standing is not as a procedural technicality, but rather as an aspect or component of justiciability. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 147 (1997) (citing *Wellman*, 174 Ill. 2d at 344). "The essence of the inquiry regarding standing is whether the litigant, either in an individual or representative capacity, is entitled to have the court decide the merits of a dispute or a particular issue." *Wellman*, 174 Ill. 2d at 345.

¶ 93    We previously explained that Donahue failed to properly plead sufficient facts demonstrating that he was a shareholder in GGE, Inc. The record is devoid of evidence supporting Donahue's allegation that he was a shareholder, with the exception of the insufficient April 10, 2012 email in which Anthony, without proper authority or authorization, delineated a proposal for the equity structure of GGE, Inc. In any event, following the bankruptcy court's confirmation of GGE, Inc.'s reorganization plan, to which Donahue never objected as a participant of the bankruptcy proceedings, any equity interest Donahue allegedly might have held was extinguished. Accordingly, he has not pled sufficient facts establishing himself as a shareholder, and thus lacks standing to bring both individual and derivative claims on behalf of GGE, Inc.

¶ 94    Even if Donahue sufficiently pled facts demonstrating he was a shareholder in GGE, Inc., as to his individual claims against Anthony and Komen, " '[a] shareholder of a corporation does not acquire standing to maintain an action in his or her own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists of [*sic*] the diminution in value of his or her corporate shares resulting from the impairment of corporate assets.' " *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1054 (2005) (quoting 13 Ill. L. & Prac. *Corporations* § 159, at 400 (2000)).

¶ 95    Donahue lacked standing to allege the direct and derivative claims asserted in counts III through VII. We therefore affirm the circuit court's order dismissing counts III through VII of the amended complaint, pursuant to section 2-619 of the Code.

¶ 96                                    Denial of Motion to Compel

¶ 97    Finally, Donahue argues the circuit court erred by denying his motion to compel production of corporate records and communications with Leonard Komen, who Donahue alleges acted as counsel for GGE, LLC. He contends there was no reasonable expectation of confidentiality to support defendants' claim of attorney-client privilege and that he was entitled to review the documents as chief operating officer and a shareholder of GGE, Inc. He also contends that if a party discloses to a third-party a confidential communication, then the communication is no longer protected by the attorney-client privilege. He points to Komen's affidavit, in which Komen attested that after receiving the ownership structure of GGE, Inc. from Anthony, Komen contacted GGE, Inc.'s attorney and accountant, both of whom confirmed that no employees of GGE, Inc. owned any of the corporation's shares. Among other things, Donahue seeks the right to question the truthfulness of Komen's affidavit and argues that he is entitled to documents communicated while he served as one of GGE, Inc.'s officers.

¶ 98    Defendants respond that the circuit court's dismissal of the entire complaint rendered the motion to compel moot. They argue that Donahue failed to present a proper record to allow this court to determine whether the circuit court erred in finding documents subject to the attorney-client privilege. Finally, defendants contend that the assertion of the attorney-client privilege was well-founded because Donahue merely made unproven allegations that he fell within the corporate control group and that those allegations were insufficient to overcome the privilege. Defendants

contend that Donahue was not within the control group, which was later confirmed by the circuit court's *in camera* review.

¶ 99 As the movant below and now, as the appellant, Donahue had the burden to provide this court with a complete record to review the circuit court's ruling, particularly as to whether the circuit court acted within its discretion by denying the motion to compel. None of the documents reviewed by the circuit court are included in the record for this court's review, which counsel for Donohue confirmed during oral argument before this court. Without an adequate record preserving the claimed error, we must presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392.

¶ 100 Accordingly, we cannot review this claimed error to determine whether the circuit court abused its discretion when it granted defendants' motion to compel. We therefore affirm the circuit court's decision to deny the motion to compel. Further, we note that our affirmance of the circuit court's decision to grant defendants' motions to dismiss renders Donohue's motion to compel as moot.

¶ 101                                    CONCLUSION

¶ 102 Having found that the circuit court correctly dismissed all counts of the amended complaint with prejudice and did not abuse its discretion in denying the motion to compel, we affirm the judgment of the circuit court of Cook County.

¶ 103 Affirmed.